BARBARA SCHONEBERG, Plaintiff-Appellant, *v.* GRUNDY COUNTY SPECIAL EDUCATION COOPERATIVE *et al.*, Defendants-Appellees.

Third District   No. 77-502

Opinion filed January 10, 1979.—Rehearing denied February 22, 1979.

Carole K. Bellows, of Bellows & Bellows, of Chicago, for appellant.

Eugene W. Hayes, of Morris, and Francis D. Morrissey, John W. Dondanville, and Norman J. Barry, Jr., all of Baker & McKenzie, and William J. Scott, Attorney General, both of Chicago (Imelda R. Terrazino, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Plaintiff, Barbara Schoneberg, began this action by filing a charge of unfair employment practices with the Illinois Fair Employment Practices Commission (Commission). As is pertinent to this appeal, the plaintiff alleged that male teachers received extra pay for duties which she was required to perform without additional compensation and plaintiff was refused employment because of her sex. On March 15, 1974, the Commission issued a complaint against the defendants Grundy County Special Education Co-Operative (Co-Operative) and Board of Education District Number 54 (Board), based upon the charge filed by plaintiff. After a hearing on the merits of the complaint, the hearing examiner issued an order recommending that the complaint be dismissed. Following a review hearing, the Commission, with one dissent, adopted the recommendations of the hearing examiner and dismissed the complaint. Plaintiff then filed a complaint for administrative review with the circuit court of Grundy County. The circuit court affirmed the decision of the Commission and this appeal followed. We reverse and remand.

The primary matters before us involve plaintiff's application and qualification for a fourth-grade teaching position and the extent of extra duty she was required to perform prior to her termination from defendant's employ. Due to the nature of our decision, a lengthy exposition of the facts is required.

Plaintiff is a female teacher with certificates for teaching elementary education, educably mentally handicapped children, and children with learning disabilities. She received a bachelor of science degree in education in the summer of 1972. In August of 1972 plaintiff entered into a contract with the Board to teach a special education class at Center School in Morris, Illinois. Plaintiff's immediate superior at Center School was Steven Black, who is the principal of the school. Plaintiff also worked

under the supervision of Doris Heino, director of the Special Education Co-Operative. The number of students initially in plaintiff's class was one less than the maximum allowed by State law and when that number exceeded the legal limit, a teacher's aid assisted plaintiff.

Apart from teaching, all teachers at Center School were required to fulfill without extra pay certain additional responsibilities in the nature of supervising nonclassroom activities. Aside from these responsibilities, District No. 54 had an "extra-duty" program which provided a maximum of $600 additional compensation for teachers working 120 hours over the responsibilities assigned all teachers. Prior to the 1972-73 school year, the extra pay program was limited to persons who were a head of a household. Pursuant to a professional negotiating agreement between teachers and the Board, the program was modified for the 1972-73 school year to eliminate the head of household requirement, but any teacher with prior experience while the head of a household requirement was in effect would be preferred over other teachers. Of the 18 teachers receiving extra duty pay of $600 in District No. 54 for the year 1972-73, 17 were male.

For the first two months of the 1972-73 school year, plaintiff was required to supervise loading and unloading of school buses every third or fourth week in rotation with other teachers. In December of 1972 plaintiff was requested by Black to perform additional recess and lunch duty. At that time, plaintiff asked Black for extra pay because she was aware that William Johnson, another teacher at Center School, was receiving extra pay. Black refused her request, giving as a reason that plaintiff's nonteaching duties were no more than what other teachers were required to perform.

The events culminating in plaintiff's charge of discrimination in hiring occurred the following spring.

According to plaintiff's testimony, in the middle of March of 1973 plaintiff was informed by Principal Black that her special education class would not be continued for the following year. The following day plaintiff spoke to Doris Heino concerning the same matter. Heino informed plaintiff that her class was going to be phased out after the 1972-73 school year because the four learning disabilities classes would be reduced to three such classes the following year. Since plaintiff was the last learning disabilities teacher hired, she would be the one let go.

The next day plaintiff approached Black about a teaching position for the fourth grade which plaintiff had learned was going to be available for the next school year. It is for this position that plaintiff claims she was discriminated against. When plaintiff requested the job for the fourth grade, Black responded that he had already offered the job to William Johnson and Brent McCardle and that he would prefer to have a man for

that class. Approximately a week later, plaintiff approached Black again after learning that Johnson had rejected the offer. She again requested the job and Black responded that even if the people he had offered it to were not going to take it, he would still prefer to have a man for the job. Plaintiff's testimony of Black's preference for a man was never rebutted or in any way challenged, but to the contrary, Black admitted such a preference.

During Black's testimony, when asked if he had a reason for preferring a male teacher for the fourth-grade position, Black responded affirmatively. He gave as a reason for such a preference that it was an educational advantage to have a strong male influence in environment "and so this is why I was looking for a male." He also indicated that the school relied on men teachers to handle the bulk of extra duties and athletic programs.

According to Principal Black's testimony, William Johnson, a teacher at Center School with similar experience as plaintiff, was given the option of returning to the school district for the year 1973-74 if he wished, but Johnson didn't. Black testified Johnson could have the job if he wanted it. Black did not ask Johnson to fill out a written application before offering him the job. Larry Walker, the male teacher who eventually filled the vacancy, was hired after being recommended by Black. However, the record is silent as to whether Walker filled out a written application.

In searching for a teacher to fill the fourth-grade teaching position, Black had the following advertisement placed in the placement service bulletin for the Illinois State University:

> "Center School District #54, 720 Division Street, 60450, fourth grade teacher, prefer man. Salary $8,100 plus $600 man."

Black admitted in his testimony that the advertisement meant a male would receive $600 more per year than a female hired for the same position.

Walker accepted the fourth-grade teaching position in June or July of 1973. He had no prior teaching experience, having received his degree in 1973. At the time Black recommended that Walker be hired, Walker had no teaching certificates. At the time of the initial hearing on plaintiff's charges, Walker was still employed by the Board.

Dale Barr, Superintendent of School District No. 54, sent a letter dated March 21, 1973, to plaintiff officially informing her that her employment would be terminated at the close of the 1972-73 school year. This letter was admitted into evidence over the objection of plaintiff. This letter provides the only evidence critical of plaintiff's qualifications to teach the fourth grade. Barr admitted in his testimony that the letter was based strictly on facts provided him by Doris Heino and the special education board and that he otherwise had no personal knowledge of the

facts contained in the letter. It cannot be determined from the record whether this letter was sent before or after the conversations plaintiff had with Heino and Black in which plaintiff was told her class was being phased out because of a cutback in the number of classes. It is clear, however, that in accordance with suggestions in the letter, plaintiff talked to Heino about the contents of Barr's letter of March 21. However, objections by the Board as to the contents of a conversation between Heino and plaintiff were sustained at the hearing. Heino did not testify at the hearing, either directly or by way of deposition.

As a preliminary matter, we must decide whether the absence of a certificate of correctness for the report of proceedings is fatal to plaintiff's appeal. Relying on Supreme Court Rule 323(b) (Ill. Rev. Stat. 1977, ch. 110A, par. 323(b)), the Board claims that plaintiff's appeal should be dismissed. The cases relied upon by the Board to support its position do not involve appeals perfected under the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, pars. 264-279) and are therefore of no particular significance.

■■ Under the Administrative Review Act, the administrative agency is to file an answer which includes the "original or a certified copy of the entire record of proceedings under review, including such evidence as may have been heard by it and the findings and decision made by it." (Ill. Rev. Stat. 1977, ch. 110, par. 272(b).) In this case the transcript of the hearing was filed as a part of the answer of the Commission and certified by the clerk of the trial court. Supreme Court Rule 324 (Ill. Rev. Stat. 1977, ch. 110A, par. 324) provides for the clerk of the trial court to certify the common-law record. A report of proceedings is certified by the judge whereas the common-law record is certified by the clerk. See *Winn v. Vogel* (1952), 345 Ill. App. 425, 103 N.E.2d 673.

Furthermore, there is an important difference between the function of the trial judge in proceedings under the Administrative Review Act and its function in proceedings under the Civil Practice Act. It would indeed be anomalous to require the trial judge, sitting as a court of review, to determine the accuracy of a report of a proceeding in which neither he nor any other member of the circuit court participated. We believe the record before us on this appeal was prepared in full compliance with all pertinent rules. We turn now to the merits of the appeal.

■■■ All parties on appeal concede that a prima facie case of an unfair employment practice is established when it is shown: (1) plaintiff is a member of a protected class; (2) plaintiff applied and was qualified for a job for which an employer was seeking applicants; (3) plaintiff was rejected despite being qualified; (4) after plaintiff's rejection the position remained open and the employer sought other applicants. Following *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668,

93 S. Ct. 1817, Illinois courts hold that after a plaintiff proves a prima facie case in an action alleging a defendant's refusal to hire, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the plaintiff's rejection. (*A. P. Green Services Division v. Fair Employment Practices Com.* (1974), 19 Ill. App. 3d 875, 321 N.E.2d 314.) Subsequent to defendant establishing a nondiscriminatory reason for rejection, the plaintiff has the opportunity to show that the defendant's assigned reason for refusing to employ was a pretext or discriminatory in its application. *McDonnell Douglas Corp. v. Green.*

As to this plaintiff's prima facie case, the only dispute on appeal concerns the second element. Defendants contend plaintiff has failed to establish that she applied and was qualified for the fourth-grade position while plaintiff argues to the contrary.

The Commission, adopting the views of the hearing examiner, found that plaintiff did not apply for the fourth-grade position. This finding and defendants' argument is premised on the fact that plaintiff did not submit a formal written application. We believe the finding of the Commission was erroneous. The testimony of Principal Black and plaintiff establishes without refutation that plaintiff's colleague, William Johnson, was offered the position without submitting or being requested to submit a formal written application. Requiring a female to submit a written application and not a male would itself seem a questionable practice under the Fair Employment Practices Act. While the record is silent as to whether the male who eventually filled the position was required to submit a written application, the record clearly indicates that he was hired upon the recommendation of Black.

On repeated instances throughout his testimony and in the employment advertisement previously set forth Black expressed an undeniable preference for a male to fill the fourth-grade position. The unrebutted evidence established that on two different occasions plaintiff told Black she wanted the fourth-grade job. Yet, when plaintiff asked for the job, she was not informed that it was necessary to submit a formal written application before she could be considered for the position, but rather was preemptorily rejected because of her sex. The only inference to be drawn from Black's testimony is that he would not consider a woman for the job.

Although we recognize that the final decision on whether or not to hire a teacher rests with the school board (Ill. Rev. Stat. 1975, ch. 122, pars. 10—20.7, 10—21.1), the School Code also requires the principal to submit recommendations to the superintendent concerning the appointment, retention and assignment of all personnel. (Ill. Rev. Stat. 1975, ch. 122, par. 10.21.4a.) Under the uncontested facts of this case, not only was an individual predisposed toward hiring a male required to make a

vital recommendation, the initial onus of finding a teacher suitable for the fourth-grade job was placed upon Principal Black, for it was he who sought out William Johnson and he placed the employment advertisement. In light of the foregoing, we believe the plaintiff did all that should be expected in applying for the fourth-grade position and the Commission erred in finding that she did not apply. We consider next the question of plaintiff's qualifications.

■■ The major thrust of the Commission's order is its conclusion that plaintiff didn't file a written application, but nevertheless alluded to the fact of elimination of her job and a letter critical of her performance which is translated by the Board into an issue regarding her qualifications. The unrebutted evidence establishes that plaintiff is certified by the State of Illinois to teach grades kindergarten through eighth grade. However, the defendants contend that plaintiff's performance for the first year in the Board's employ was not satisfactory and provides a proper basis for refusing to hire the plaintiff for the fourth-grade position. In the absence of controlling Illinois authority, Federal decisions in the area of fair employment are relevant precedents and can serve as a useful guide. (See *Montgomery Ward & Co. v. Fair Employment Practices Com.* (1977), 49 Ill. App. 3d 796, 365 N.E.2d 535; *City of Cairo v. Fair Employment Practices Com.* (1974), 21 Ill. App. 3d 358, 315 N.E.2d 344.) We agree with defendants' authority that prior poor or inadequate work performance may justify an employer's refusal to promote or rehire an employee. But whether an individual employee's work is unsatisfactory must be determined on a case-by-case basis. We note initially that the responsibility for deciding an employee's qualifications rests upon the employer. Our function is only to determine that such a decision has a rational basis supported by competent evidence. Based upon the record before us, we can only hold that the Commission erred in finding plaintiff unqualified for the fourth-grade position.

The sole evidence critical of plaintiff's work performance is the letter officially terminating plaintiff's employment. The letter stated:

> "The reasons stated were that your teaching did not meet the administrative expectations in the following areas: planning and classroom management, teaching techniques and professional attitudes and abilities."

The author of the letter admitted in his testimony that he had no personal knowledge of the facts bearing upon plaintiff's qualifications and that these facts had been supplied to him by Doris Heino. The unrebutted evidence establishes that neither Heino nor anyone else from the Co-Operative observed plaintiff during classroom hours. Heino appears to have had minimal contact with plaintiff at other times. The letter was directly contradicted by an evaluation report dated March 5, 1973,

prepared by Black. The report gave "good" evaluation of plaintiff's abilities in the areas of "classroom management," "teaching techniques" and "professional attitudes and abilities." Throughout the school year, plaintiff was never given any criticism of her job performance by Heino or anyone else.

In *Flowers v. Crouch-Walker Corp.* (7th Cir. 1976), 552 F.2d 1277, the defendant failed to communicate dissatisfaction with an employee's work performance during the major portion of the term of employment. The defendant defended its actions claiming plaintiff had failed to prove that he was satisfying the normal requirements of the job. In holding for plaintiff, the court stated that "the plaintiff need not, and indeed cannot, disprove as a cause of his discharge a source of dissatisfaction of which he is unaware. Accordingly, the employer's acceptance of his [the employee's] work without express reservation is sufficient to show that plaintiff was performing satisfactorily for the purpose of shifting the burden of proof." (552 F.2d 1277, 1283.) While Federal authorities are not controlling, this decision does indicate the importance of an employer seasonably communicating its dissatisfaction with an employee's work performance.

■■ In the present case, in March of 1973, the same month as the letter was written, plaintiff talked to Heino the day after Black told plaintiff her class would not be continued. Heino did not mention poor job performance as a cause of termination, but rather essentially reiterated what Black had said, that due to cutbacks in the number of special education classes, plaintiff's class would be phased out and plaintiff's employment terminated. It appears that after receiving the critical letter, plaintiff approached Heino for an explanation. However, plaintiff was prevented from eliciting the content of this highly relevant conversation when the hearing examiner sustained the Board's objection.

This litigation is one of two separate legal proceedings commenced by plaintiff after her termination, with litigation before the Federal District Court having been dismissed at the time of the hearing in the instant case. According to the brief of defendant Board, "The District Court also noted that as all reference to termination for reasons of incompetence was deleted from plaintiff's record, and a positive letter of recommendation substituted [by Mrs. Heino], the allegation of Constitutional deprivation would not stand." The "reference" mentioned by the Federal District Court is the letter of termination. Yet, in proceedings before the Commission and on this appeal, the Board seeks to justify its refusal to hire plaintiff based upon a letter which, at the time of the hearing, had been withdrawn from plaintiff's file and a letter of recommendation written by Heino had been substituted. While the author of the letter testified at trial, he admitted that the facts contained in

the letter were supplied by Doris Heino, who did not testify. This letter, because of its hearsay character, the substance of its contents and the surrounding circumstances, has little bearing, if any, on the qualifications of plaintiff. The letter may have been admissible for the purpose of showing that plaintiff had been given notice of termination within the time limitations prescribed by statute, but otherwise had little probative value on the issue of qualifications. There is nothing to indicate that when plaintiff was denied the position, it was because of lack of qualifications. In light of the foregoing, we believe the evidence overwhelmingly establishes that plaintiff was qualified for the fourth-grade position and the Commission erred in holding to the contrary.

Plaintiff argues that she was entitled to $600 additional pay for the year 1972-73 because she performed the same extra duties as did her male counterparts who received $600. We do not agree. The evidence is unclear as to the exact amount and nature of the extra duties plaintiff performed as compared to her male colleagues at Center School who received additional pay. The record suggests that while significant amounts of additional duty were imposed upon plaintiff, those duties involved less time and responsibility than did the extra duties of those teachers receiving the additional compensation. After examining the testimony introduced, we believe that it was within the province of the Commission to find that plaintiff was not entitled to the additional $600 for her work during the 1972-73 school year.

The advertisement in the placement bulletin for the Illinois State University states "prefer man. Salary $8,100, plus $600 man." Pursuant to statutory authority contained in the Fair Employment Practices Act (Ill. Rev. Stat. 1975, ch. 48, par. 856.05), the Commission has adopted "guidelines on discrimination in employment because of sex." Guideline IV(B) states:

> "It is considered a violation of the Act for an employer or employment agency to post or publish or place with any employment agency for publication a listing, advertisement or request for referrals which directly or indirectly expresses a preference, limitation or specification for persons of one sex, unless sex is a bona fide occupational qualification for the job involved."

The preference expressed in the advertisement is unquestionably a violation of this guideline.

The remaining issue may be treated summarily. Defendant Board contends that in light of the particular employment structure within District No. 54 (61 females and 19 males), it "should not be held liable for sex discrimination by preferring and hiring a male for the available fourth grade position." While the Board asserts it is not claiming maleness as a bona fide occupational qualification, examination of its argument belies

that assertion. Without reciting the authorities which have been examined by this court, we believe the Board has wholly failed to prove maleness was a bona fide occupational qualification for the particular position in question. Furthermore, the Commission made no such determination.

In summary, we believe that the evidence overwhelmingly established a prima facie case of discrimination because of sex and the defendant Board has not rebutted that case. Plaintiff applied for and was qualified for the fourth-grade teaching position and the Commission erred in finding to the contrary.

For the foregoing reasons we reverse the judgment of the circuit court of Grundy County affirming the order and decision of the Commission and remand the cause for such further proceedings as may be necessary to determine the amount of compensatory damages due plaintiff.

Reversed and remanded.

STENGEL, P. J., and ALLOY, J., concur.