Carol **DANIELSON**, et al., Plaintiffs,

v.

**DuPAGE AREA VOCATIONAL EDUCATION AUTHORITY, Defendant.**

No. 83 C 7047.

United States District Court,
N.D. Illinois, E.D.

April 19, 1984.

Lawrence Jay Weiner, Weiner, Neuman & Spak, Chicago, Ill., for plaintiffs.

S. Bennet Rodick, Stanley Eisenhammer, Robert Kohn, Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This civil rights action is before the court on the motion to dismiss of defendant Du-Page Area Vocational Education Authority ("DAVEA"). Plaintiffs are seven women now employed by DAVEA, suing on their own behalf and not as class representatives. The four-count complaint contains claims based on both federal and state law. Count I alleges that DAVEA discriminated against plaintiffs on account of their sex by giving them "less compensation and other terms and conditions of employment than males performing equal, comparable, or equivalent duties or functions." (Complaint ¶ 5.) This discrimination occurred "[f]rom the time of the initial placement and during the course of all subsequent employment by DAVEA .... (*Id.*) Relief in Count I is based on alleged violations of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and the Civil Rights Act of 1871, 42 U.S.C. § 1983. Count II is based on the same underlying facts but bases its claim for relief on a violation of the Fair Labor Standards Act, 29 U.S.C. § 206(d)(1) ("Equal Pay Act"). Counts III and IV are the pendent state

claims which reincorporate the same factual allegations of the federal claims. Count III alleges a violation of The School Code, Ill.Rev.Stat., ch. 122, ¶ 24–7, and count IV alleges a violation of the Illinois Constitution. DAVEA has moved to dismiss all claims for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted. Fed.R. Civ.P. 12(b)(1) and (6). In addition, DAVEA moves to strike plaintiffs' claims for punitive damages.

**Counts I and II**

DAVEA first argues that the court lacks subject matter jurisdiction over the Title VII and Equal Pay Act claims. DAVEA asserts that plaintiffs have not sufficiently alleged the exhaustion of administrative remedies, nor have they alleged that they filed their charge before the EEOC within 180 days after the last discriminatory act. The allegations relating to exhaustion on the Title VII charge areas follows:

> Each plaintiff has filed a Charge of Discrimination before the Equal Employment Opportunity Commission, has received a Right to Sue letter therefrom, and has instituted this action within 90 days from the date of said Right to Sue letter, thereby exhausting all statutory and administrative procedures prerequisite to instituting this action.

(Complaint Ct. I, ¶ 7.) The exhaustion allegations to the Equal Pay Act claim are substantially the same as the above, with the addition that "[e]ach of the plaintiffs has given her consent in writing to become a party to this action. Said consents are attached to the Complaint." (Complaint Ct. II, ¶ 7.) The right to sue letters are issued by the Attorney General's office, 42 U.S.C. § 2000e–5(f)(1) and are dated July 12, 1983, eighty-seven days before the suit was filed on October 7, 1983.

Jurisdiction over the subject matter of the complaint must be shown affirmatively on its face; absent proper jurisdictional averments, the complaint may be dismissed. *Haley v. Childers,* 314 F.2d 610 (8th Cir.1963). A suit for employment discrimination should not be dismissed when

general allegations of compliance with administrative conditions precedent are made. *E.E.O.C. v. Airguide Corp.,* 395 F.Supp. 600 (S.D.Fla.1975), *rev'd on other grounds,* 539 F.2d 1038 (5th Cir.1976). For example, the jurisdictional averments held adequate in *E.E.O.C. v. Wah Change Albany Corporation,* 499 F.2d 187 (9th Cir.1974), included a general claim that "(a) conditions precedent to the commencement of this action have been fulfilled." *Id.* at 188 n. 1. Here, plaintiffs have alleged that they have exhausted their administrative remedies. They have explained that they received their right to sue letters and commenced their suit within ninety days of its receipt.

DAVEA counters that plaintiffs do not allege that any discrimination occurred within 180 days before the filing of their charge before the EEOC. Even if such a specific allegation of compliance with administrative remedies were required in the pleadings, plaintiffs have fulfilled this standard. In their fifth allegation, they state that the discrimination in compensation and other terms and conditions of employment continued "during the course of all subsequent employment by DAVEA ...." As plaintiffs are still employed thereby, (Complaint ¶ 4), the clear implication is that the discrimination has continued. This implication is supported by plaintiffs' memorandum in opposition to the motion to dismiss, in which they explain that the discrimination continues to the present. (Plaintiffs' Memorandum in Opposition p. 7.)

Defendant continues that plaintiffs' theory of timely filing is one of "continuing violation." As such, their allegations do not fit within the doctrine as it is explained in *Stuart v. C.P.C. International,* 679 F.2d 117 (7th Cir.1983). The court notes that at least on the discriminatory compensation claims, which are explained to continue to the present, plaintiffs have clearly alleged a discriminatory act occurring within 180 days of the filing of the charge. One court explains:

> Under Title VII, discrimination as to salary is held to be a continuing violation of the law. A charge attacking a continu-

ing violation such as salary discrimination is timely if it is filed within 180 days of the last act of alleged discrimination. (Citations omitted.)

\*      \*      \*      \*      \*      \*

Here ... plaintiff claims that defendant discriminated against her in pay during her two years of teaching, a violation that was continuing when she filed her EEOC charge.... Plaintiff did, therefore, comply with the 180 day rule, and neither of her claims for salary discrimination are time-barred under Title VII.

*Fisher v. Dillard University*, 499 F.Supp. 525, 528–529 (E.D.La.1980); *e.g., Boyd v. Madison County Mutual Insurance Co.*, 653 F.2d 1173, 1176 (7th Cir.1981), *cert. denied*, 454 U.S. 1146, 102 S.Ct. 1008, 71 L.Ed.2d 299 (1982). Hence, the salary discrimination claims are not barred. The court can make no holding on whether any of the other "terms and conditions" have been timely brought before the EEOC, either as acts of discrimination occurring within the 180-day period or as continuing violations. These other types of discrimination are not explained in the complaint. As to them, therefore, the court accepts plaintiffs' general allegation that administrative remedies have been properly exhausted.

One aspect of administrative exhaustion concerns the court. Plaintiffs are required, under 42 U.S.C. § 2000e–5(c) and (e), to file a complaint with the Illinois Human Rights Commission before filing with the EEOC. The court's concern is based on plaintiffs' insistence in its discussion of the *state* counts that they need not exhaust their remedies before the Illinois commission. This suggests that they may not have thought it necessary to file their complaint with the Illinois Commission. It is possible, however, for plaintiffs to have failed to exhaust their state administrative remedies for purposes of bringing a state claim, while still satisfying the much more limited exhaustion required under federal law. The court simply notes this point, and accepts plaintiffs' allegations that exhaustion under federal law was properly accomplished.

■ DAVEA next claims that Title VII does not protect against discrimination based on the theory of "comparable worth." It devotes six pages of its memorandum to examining the leading cases on this difficult concept, *County of Washington v. Gunther*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981), and *AFSCME v. State of Washington*, 578 F.Supp. 846 (W.D.Wash.1983). The court deems a discussion of this issue is premature at this stage. Plaintiffs' complaint alleges that they were discriminated against by receiving less favorable terms and conditions of employment than "males performing equal, comparable, or equivalent duties and functions." (Complaint ¶ 5.) There is no indication in the complaint or in plaintiffs' memorandum, of what they mean by the word "comparable." Even if the court were to deem the word a term of art, meaning the theory of "comparable worth" (that is, for example, comparing the terms and conditions of employment of male truck drivers and female lab technicians), there is no indication from the general allegations of the complaint that plaintiffs are proposing such a theory. That they are not is supported by their grouping of the term with the words "equal" and "equivalent." Moreover, their use of the word on page four of the memorandum indicates that they do not understand the word to be a proxy for the "comparable worth" theory. The complaint, in sum, does not allow the court to ascertain whether plaintiffs are proposing that Title VII protects against discrimination between jobs with comparable worth. On the other hand, the complaint makes clear that it is comparing at least some jobs that are equal or equivalent. Based on these observations, the court will not reach the "comparable worth" issue. DAVEA is not injured by the court's deeming this issue premature, as even were the court to strike "comparable" from the complaint, allegations of discrimination against plaintiffs holding jobs "equal" or "equivalent" to those of men

would prevent the court from dismissing the complaint.

■ Defendant's next claim is that plaintiffs have not alleged facts sufficient to state a claim under Title VII, § 1983, and the Equal Pay Act. While plaintiffs' allegations are not as specific as they could be, plaintiffs have alleged enough facts to state a claim. They allege that they are women, working as school teachers for DAVEA. They assert that they were discriminated against in their terms and conditions of employment on the basis of their sex. They claim that men in equal, equivalent, or comparable positions received more favorable terms and conditions of employment. Plaintiffs have properly stated claims under these statutes.

■ DAVEA's final argument addressed to the federal claims concerns punitive damages under § 1983. (Plaintiffs do not deny that Title VII and the Equal Pay Act prohibit punitive damages.) The court finds that plaintiffs have not alleged facts that would allow them to recover punitive damages. Hence, the claims for punitive damages are stricken.

The Supreme Court in *City of Newport v. Fact Concerns, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), recently reaffirmed the general rule that municipalities are not liable for punitive damages. In its historical discussion of actions against municipalities and of the enactment of § 1983, the Court made clear that punitive damages have not been awarded or thought appropriate even when municipalities have been found to have acted intentionally and maliciously. The Court concluded that punitive damages as a "punishment" cannot be asserted against the governmental entity itself. Even given the deterrence object of § 1983, such damages against a municipality are not justified. *Id.* at 267–268. During this discussion, the Court mentioned in a footnote that "It is perhaps possible to imagine an extreme situation where taxpayers are directly responsible for perpetrating an outrageous abuse of constitutional rights.... [S]uch an occurrence is sufficiently unlikely that

we need not anticipate it here." *Id.* at 267 n. 29. Plaintiffs have admitted that none of the cases examining complaints under this standard have found municipalities liable for punitive damages. The court is persuaded that the allegations before it do not set forth a case of direct taxpayer responsibility for "outrageous abuse of ... rights." Plaintiffs' general allegations simply set forth that DAVEA knew or should have known that its conduct was in violation of plaintiffs' rights. (Complaint ¶ 6.) There is no allegation of taxpayer responsibility for DAVEA's conduct. The prayers for punitive and exemplary damages are stricken from Counts I and II.

DAVEA's motion to dismiss Counts I and II is denied. Its motion to strike the prayers for punitive and exemplary damages in these counts is granted.

**Counts III and IV**

As the court has not dismissed the federal claims, it must examine whether it has pendent jurisdiction over the state claims. In this case, it is clear that the court may exercise pendent jurisdiction over Counts III and IV, as they rest on the same factual allegations found in the federal claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The court must therefore address DAVEA's assertion that these two counts should be dismissed under Rule 12(b)(1) and (6).

DAVEA contends that plaintiffs must exhaust state administrative remedies available under the "Illinois Human Rights Act," Ill.Rev.Stat., ch. 68 ¶ 1–101 et seq., before filing a private action under ¶ 24–7. They also argue that in any case, a private claim cannot be implied under ¶ 24–7. It is clear that private claims have been brought under other sections of The School Code. *E.g., Winks v. Board of Education of Normal Community Unit School District No. 5*, 78 Ill.2d 128, 398 N.E.2d 823, 34 Ill.Dec. 832 (1979) (private claim under ¶ 24–6's sick leave provisions). However, the court has been unable to find cases involving unlawful discrimination that have been brought

directly under The School Code. For example, in *Legg v. Illinois Fair Employment Practices Commission,* 28 Ill.App.3d 932, 329 N.E.2d 486 (1978), a teacher brought his charge of race discrimination under § 3 of the Fair Employment Practices Act, Ill. Rev.Stat., ch. 48, ¶¶ 851, 853 (1973). Among his claims were that ¶ 24–4 of The School Code, prohibiting employment discrimination, was violated in his case. *Cf. Schoneberg v. Grundy County Special Education Cooperative & Board of Education District No. 54,* 67 Ill.App.3d 899, 385 N.E.2d 351, 24 Ill.Dec. 439 (1979) (a teacher charging discrimination in compensation based on sex brought her claim under the Fair Employment Practices Act, Ill.Rev.Stat. ch. 48 ¶ 856.06).[1] The court doubts such a direct private claim is available. However, assuming a direct claim may be brought under ¶ 24–7, must the Act's administrative procedures be followed?

The Illinois Human Rights Act (the "Act") was enacted on December 6, 1979, to become effective on July 1, 1980. As such, it is clearly a more recent legislative pronouncement than The School Code, which was enacted in 1961, to become effective on July 1, 1961. The Act's Declaration of Policy states that the public policy of the state includes freedom from unlawful discrimination and implementation of constitutional guarantees. Ill.Rev.Stat., ch. 68 ¶ 1–102(A), (C). Included is also a public policy against "Unfounded Charges of Discrimination." *Id.* at (E). To effectuate these policies, the Act provides an elaborate system of administrative procedures and regulations. *See id.* at ¶¶ 7–101 to 111 and 8–101 to 112. As the Illinois Appellate Court has explained recently, "[s]everal other provisions of the Illinois Human Rights Act reveal a legislative intent to promote the settlement of discrimination

charges prior to formal proceedings before the Commission." *Board of Education of Hawthorne School District No. 17 v. Eckmann,* 103 Ill.App.3d 1127, 432 N.E.2d 298, 59 Ill.Dec. 714 (1982) (proceeding relating to school teacher's charge of sex discrimination brought under the provisions of the Act). The provisions dealing with settlement demonstrate an intention to promote settlement generally. *See id.* ¶ 7–103(D). Finally, the Act provides that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." *Id.* at ¶ 8–111(D). The Act's role as a preemptive vehicle for resolution of employment discrimination cases in Illinois, *Thakkar v. Wilson Enterprises, Inc.,* 120 Ill.App.3d 878, 458 N.E.2d 985, 987, 76 Ill.Dec. 331, 333 (1983), *pet. for leave to appeal granted,* No. 59683 (January 27, 1984), is demonstrated in two recent Illinois Appellate Court decisions. In *Thakkar,* the Act was held to provide the exclusive remedy for violations of Illinois Constitution, article I, section 17. *Id.* 458 N.E.2d at 989, 76 Ill. Dec. at 335.[2] And, in *Hutchcraft Van Service, Inc. v. City of Urbana Human Relations Commission,* 104 Ill.App.3d 817, 433 N.E.2d 329, 60 Ill.Dec. 532 (1982), the Court examined how the anti-discrimination ordinance of Urbana, Illinois, a home rule unit, interacted with the Act. The Court concluded that in enacting the Act, the state legislature "preempted the subject of the freedom from unlawful discrimination and that insofar as the Urbana ordinance attempts a broader scope than that set forth in [the Act], it is not permissible." 433 N.E.2d at 334, 60 Ill.Dec. at 537.

◼ Hence, it is clear that Illinois courts have broadly interpreted the applicability of the Act and the reach of its administra-

---

1. The Illinois Human Rights Act replaced the Fair Employment Practices Act effective July 1, 1980.

2. Section 17 provides:

   All persons shall have the right to be free from discrimination on the basis of race, color, creed, national ancestry and sex in the

hiring and promotion practices of any employer or in the sale or rental of property.

   These rights are enforceable without action by the General Assembly, but the General Assembly by law may establish reasonable exemptions relating to these rights and provide additional remedies for their violation.

tive procedures. In view of this approach, the court must determine whether a charge of unlawful discrimination in the employment of school teachers must be brought under the Act, or may be brought under The School Code, without any resort to the Act's comprehensive administrative and settlement devices. The court finds that the Act's procedures must be followed. First, the Act contains public policy objectives that are not expressed in the School Code and that are applicable to all cases of employment discrimination. These are the policies in favor of nonjudicial dispute resolution and against the filing of unfounded claims. There is no indication in the Act that claims concerning school-related employment should not be subject to procedures designed to implement these objectives. The language of ¶ 8–111(D), "[e]xcept as otherwise provided by law," indicates that unless a clear intent to bypass the Act's provisions is expressed, a statute proscribing civil rights violations is subject to the Act's nonjudicial dispute resolution mechanisms. Obviously, The School Code, enacted before the Act, could not have included language demonstrating such intent in its provisions. And, ¶ 24–7 does not appear to have been amended after the enactment of the Act. However, the language of ¶ 24–7 does not persuade the court that it was meant to provide a civil claim independent of any comprehensive anti-discrimination scheme that might eventually be enacted. It is not even clear that it provides a basis for a claim at all. A similar anti-discrimination provision, ¶ 24–4, provides only that violators are subject to monetary penalties and shall be deemed guilty of a Class B misdemeanor. Finally, the lack of any cases brought as direct claims under either ¶ 24–4 or ¶ 24–7

supports the court's conclusion. Hence, Count III is dismissed.

 The court also dismisses Count IV for lack of subject matter jurisdiction. Count IV purports to be a direct action under §§ 17, 18 of article 1 of the Illinois Constitution. The Illinois Appellate Court has already held in *Thakkar* that claims under § 17 are subject to the Act's administrative procedures. The *Thakkar* court's reasoning is persuasive and the court chooses to follow it.[3] This action, claiming employment discrimination based on sex, is clearly covered by the Act's provisions. The court is also persuaded that the logic of *Thakkar* requires the action, to the extent it is brought under § 18, to be subject to the Act's administrative procedures.[4] The court does not determine whether a claim could be maintained directly under § 18 or, if so, whether a claim alleging some other type of discrimination based on sex would be subject to the act's procedures. The court simply finds that if a claim for employment discrimination could be brought under § 18, it is subject to the Act's nonjudicial procedures.

The motion to dismiss Counts I and II is denied. The prayers for relief for punitive and exemplary damages are stricken. Counts III and IV are dismissed for lack of subject matter jurisdiction.

It is so ordered.

---

3. Another court in this district dismissed a claim brought under § 17, explaining it was inappropriate for a federal court to exercise pendent jurisdiction over a claim involving undecided, complicated, and important state law issues. It went on to note that were it to exercise jurisdiction over the claim, it doubted that a direct claim could be brought given the comprehensive Illinois Human Rights Act designed to remedy the same types of violations.

*Curtis v. Continental Illinois National Bank,* 568 F.Supp. 740 (N.D.Ill.1983) (Bua, J.).

4. Section 18 provides:

The equal protection of the laws shall not be denied or abridged on account of sex by the State or its units of local government and school districts.