**Jo-An CLAY, Plaintiff,**

v.

**QUARTET MANUFACTURING COMPANY, an Illinois Corporation, David Green and Melvin Lieberman, Defendants.**

No. 85 C 6771.

United States District Court, N.D. Illinois, E.D.

June 30, 1986.

John L. Gubbins, Margaret Young, Chicago, Ill., for plaintiff.

Thomas A. Foran, Jack J. Carriglio, Carmen D. Caruso, Foran, Wiss & Schultz, Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

The Plaintiff, Jo-An Clay (CLAY), began her employment with the Defendants, Quartet Manufacturing Company (QUAR-

TET), David Green (GREEN) and Melvin Lieberman (LIEBERMAN) in 1967. In October, 1984, Clay filed a charge with the Equal Employment Opportunity Commission (EEOC). Clay charged Defendants with violations of Title VII and the Equal Pay Act. On October 2, 1984 Clay was discharged by Defendants. On October 24, Clay filed a second charge with the EEOC. The second charge added a retaliation claim to the existing sex discrimination claims. The second charge was amended on February 15, 1985 to include sexual harassment. Clay received her right to sue letters from EEOC and this lawsuit followed.

The Complaint is in seven Counts. Count I alleges Defendants instituted a wage differential based on Clay's sex in violation of the Equal Pay Act. 29 U.S.C. § 206(d)(1). Count II alleges Defendants discriminated against Clay on the basis of sex in the terms and conditions of her employment in violation of Title VII. 42 U.S.C. § 2000e–2(a). Count III alleges Clay was coerced into various sexual encounters with Green and Lieberman and that both Defendants began harassing her after she terminated the encounters in violation of Title VII. Count III alleges Defendants fired Clay in retaliation for filing a charge with the EEOC, also a violation of Title VII. Counts V, VI and VII are pendent state law claims. Count V alleges the intentional infliction of severe emotional distress. Count VI alleges battery. Count VII alleges wrongful discharge. All three state claims are based on the facts supporting the federal claims. Defendants have moved to dismiss all seven Counts. *See* Fed.R.Civ.P. 12(b)(6).

As always on a Rule 12(b)(6) motion, the Court takes the allegations contained in the Complaint as true and gives Clay the benefit of all favorable inferences flowing from those allegations. *See Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984). Contrary to Defendants' apparent misunderstanding of the standard applicable to a Rule 12(b)(6) motion, the Court may not dismiss a Complaint merely because success at trial appears remote or because the Complaint's allegations appear unlikely of proof. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). One final note is appropriate before addressing the merits of Defendants' various motions. None of the parties on this motion has performed adequately. The two most obvious and common defects in the briefs on this motion are a general lack of clarity of argument and a paucity of citation to relevant case law. Neither of those shortcomings should appear in briefs filed with this or any other court. The Court now turns to Defendants' motion to dismiss.

## I.

Count I alleges Defendants applied a discriminatory wage differential based on Clay's sex in violation of the Equal Pay Act. 29 U.S.C. § 206(d)(1). Clay identifies the first and last incidents of discriminatory pay—one in 1974, the other in 1984. Defendants say both claims are barred by the applicable period of limitation. An equal pay claim must be brought within two years of the alleged violation or, if willfulness is alleged, within three years. 29 U.S.C. § 255(a). But, like most things in the law, an exception exists. Where a discriminatory pay scale persists over the course of employment, an equal pay claim may continue as long as the discriminatory pay scale is in force. *Jenkins v. Home Insurance Co.,* 635 F.2d 310, 312 (CA4 1980) (per curiam). In this case, Clay alleges she was paid less than males doing comparable work when she became national sales manager for Quartet (1974) and was paid less than males when she was fired (1984). The inescapable inference is that Clay's pay checks from 1974 through 1984 reflected the discriminatory pay differential she alleges. Count I alleges a continuing violation of the Equal Pay Act and Defendants' motion to dismiss Count I must be denied. *Acrouin v. Louis Allis Division,* 618 F.Supp. 221, 223 (E.D.Wis. 1985); *see also Perex v. Laredo Junior College,* 706 F.2d 731, 733–34 & n. 8 (CA 5 1983). For similar reasons Defendants'

motion to dismiss Counts II and III must also be denied.

Count II alleges Defendants applied discriminatory terms and conditions of employment to Clay from 1974 through 1984 because of her sex. Count III alleges a continuous course of sexual harassment from 1983 through 1984. Both Counts are premised on a series or pattern of related discriminatory conduct. And Clay alleges the final act of discrimination occurred within the charge filing period (*viz.* within 180 days of the violation). Those allegations, taken as true for the purposes of this motion to dismiss, state a claim for a continuing violation of Title VII. *See Stewart v. CPC Int'l, Inc.*, 679 F.2d 117, 121–22 (CA 7 1982) (per curiam); *Elliott v. Sperry Rand Corp.*, 79 F.R.D. 580, 585 (D.Minn. 1978) (defining one form of continuing violation as a challenge to "a series of events, all of which are alleged to have been discriminatory, but only one of which is alleged to have occurred within the [charge filing period]"). *See also Berry v. Bd. of Supervisors*, 715 F.2d 971, 979–82 (CA5 1983) (proposing three-part test consisting of type, frequency and permanence of discriminatory conduct).

## II.

Defendants make three additional attacks on Count III: 1) Clay fails to plead specific instances of sexual harassment for the period of January, 1983 through October, 1984; 2) Clay's amendment to her EEOC charge (February 15, 1985) fails to state facts which support the harassment charge; 3) Clay's amendment to the EEOC charge fails to plead the specific dates of the alleged harassment.

■ Initially, the Court notes Defendants have not made a motion for a more definite statement. *See* Fed.R.Civ.P. 12(e). Disregarding the remote possibility that such a motion would be granted in this case, it is incongruous that Defendants ask Clay to plead evidence in support of her Complaint when they simultaneously criticize her pleading of "background" material. *See* Deft's Motion to Dismiss at 4–5;

Deft's Reply at 1–2. In any case, Defendants' motion to dismiss must be denied; Clay need not plead evidence in support of her Complaint. *See* Fed.R.Civ.P. 8(a).

Defendants' next two arguments attack the validity of the amended charge filed with the EEOC on February 15, 1985. Again, the motion to dismiss must be denied. Defendants do not attack the validity of Clay's amended EEOC charge. They attack the adequacy of the charge's allegations to support a claim in this Court. Consequently, on this motion to dismiss the Court must take the document at face value and treat it as what it purports to be— an amended charge filed within the charge filing period. Defendants are free to discover the background of the filing of the amended charge and attack its validity on summary judgment (for example, did Clay follow the appropriate procedures in amending her original charge?), but at this point the Court takes the amended charge as true.

■ A charge filed with the EEOC "should contain ... [a] clear and concise statement of the facts, including the pertinent dates, constituting the alleged unlawful employment practices." 29 C.F.R. § 1601.12(a)(3)(1983). It was, therefore, necessary for Clay's amended charge to identify the parties charged, the kind of discrimination alleged and the period of time she suspected the discrimination took place. *Cf. EEOC v. Shell Oil Co.*, 466 U.S. 54, 104 S.Ct. 1621, 1633, 80 L.Ed.2d 41 (1984) (construing 29 C.F.R. § 1601.12(a)(3) in pattern-and-practice case). Clay's amended charge clearly meets the first two requirements. The amended charge filed with the EEOC charged Greene and Lieberman with sexual harassment. And the third requirement (the time-frame) is met when the amended charge is viewed in the context of the original charge. The original charge identified the appropriate time-frame as the length of Clay's employment with Quartet. The Court does not find it inappropriate to apply the same time-frame to Clay's charge of sexual harassment. It is of little consequence that Clay chose not

to base her lawsuit on the earlier harassment (the alleged coerced sexual encounters) rather than the post-1983 harassment by Defendants. The motion to dismiss, based on the theory that Clay's amended charge is defective, is denied. Before addressing Defendant's next contention, however, the Court makes one final observation.

Clay suggests that even if her amended EEOC charge is defective, the sexual harassment claim must survive because it is "reasonably related" and "grows out of" her sex discrimination claim. *See Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.,* 538 F.2d 164, 167 (CA7 1976). *Jenkins* held that a discrimination claim should not be dismissed if the allegations contained in the complaint are "like or reasonably related" and "grow out of" the allegations stated in the EEOC charge. That rule, in keeping with the remedial purpose of Title VII, must be applied liberally. *See Babrocky v. Jewel Food Co.,* 773 F.2d 857, 864 (CA7 1985). But even with a liberal application, *Jenkins* does not easily fit here. *See Rizzo v. WGN Continental Broadcasting Co.,* 601 F.Supp. 132, 134 (N.D.Ill.1985). The only commonality between Clay's discrimination and harassment claims is "sex" and these Defendants. Clay alleges both kinds of discrimination were motivated by her sex. But the rather blatant sexual harassment Clay alleges is plainly different from the rather subtle wage discrimination she charges. And harassment does not necessarily "grow out of" a pay differential based on sex. At least not in the way that a charge of sex-segregated job classifications "grows out of" an unequal pay claim. *See Babrocky,* 773 F.2d at 864–65. The Court seriously doubts that *Jenkins* fits this case.

### III.

Counts V and VI are pendent state claims. Count V charges Defendants with the intentional infliction of severe emotional distress and Count VI alleges battery. Defendants contend that both common law claims rooted in allegations of sexual harassment and generally related to the employment context are preempted by the Illinois Human Rights Act (IHRA). Ill. Rev.Stat. ch. 68, § 8–111 (1985).

In support of their position, Defendants cite *Mein v. Masonite Corp.,* 124 Ill.App.3d 617, 80 Ill.Dec. 154, 464 N.E.2d 1137 (5th Dist.1984) and *Danielson v. DuPage Area Vocational Education Authority,* 595 F.Supp. 27 (N.D.Ill.1984). Unknown to Defendants, apparently, the Fifth District's decision in *Mein* was affirmed by the Illinois Supreme Court. *See Mein v. Masonite Corp.,* 109 Ill.2d 1, 92 Ill.Dec. 501, 485 N.E.2d 312 (1985). The Illinois Supreme Court's rationale in affirming *Mein* is only slightly different from that of the appellate court. The issues, therefore, do not require further briefs. The Court simply disregards any conflicting aspects of the Fifth District's decision.

Defendants concede that IHRA does not purport to preempt all common law torts. Deft's Reply at 4–5. But they do think IHRA preempts common law torts generally arising in the employment context. That is an intriguing thought and it might have led to an interesting analysis, but Defendants have not seen fit to provide the Court with any further argument on the point. They merely cite their case law and rest, implying the cases are sufficient and no elucidation is necessary. But Defendants are wrong on both counts: the argument is a difficult one and the cited cases (either alone or together) do not support the broad principle Defendants propose.

The *Mein* Court (the Illinois Supreme Court, that is) concluded that the Illinois "legislature intended [IHRA], with its comprehensive scheme of remedies and administrative procedures, to be the exclusive source for redress of alleged human rights violations." 52 Ill.Dec. at 504, 485 N.E.2d 312. That statement constitutes the only direct reference to the preemptive effect of IHRA stated in *Mein.* It is far from an all encompassing command that IHRA preempts common law tort claims arising in the employment context.

Indeed, *Mein* contains no support for the principle that IHRA preempts all employment-related torts. Moreover, the *Mein* Court consistently used the terms "civil rights" and "human rights" violations to describe the coverage of IHRA. *See id.* This Court is hesitant to declare the preemptive effects of IHRA to the extent suggested by Defendants when *Mein* is, at most, ambiguous on the issue and, at the very least, suggestive that the reach of IHRA's preemption extends only to "civil rights" and "human rights" claims. Defendants' citation of *Danielson* is also unconvincing.

*Danielson* involved federal and pendent state law claims of employment discrimination based on sex. Both sets of claims were premised on the same facts. 595 F.Supp. at 18–19. Defendants filed a motion to dismiss the pendent state claims on the theory that the Plaintiffs could not bring a private action for sex discrimination under the Illinois Education Act (EDUCATION ACT) without first exhausting the remedies provided by IHRA. But the *Danielson* court did not decide the case on an exhaustion theory. Instead, the Court's analysis is a mixture of the preemptive effect of IHRA and an examination of the appropriate statutory basis for a sex discrimination claim by public school teachers. The holding of the case reflects the Court's mixed analysis: the sex discrimination provisions of IHRA, rather than the ambiguous provisions of the Education Act, provide the exclusive remedy for civil rights claims based on sex discrimination under Illinois law. *Danielson*, 595 F.Supp. at 39. But that holding does not help Defendants because it contains no broad rule of IHRA's preemptive effect. Instead, the case simply holds that sex discrimination claims must be brought under IHRA.

■ Defendants would have IHRA preempt all "civil rights" discrimination claims and all factually related common law torts. Neither *Mein* nor *Danielson* supports such a broad rule. Instead, those cases stand for the rather limited rule that common law claims predicated on the poli-cies or provisions of IHRA are barred by IHRA. Thus, for example, a claim of wrongful discharge based on race discrimination is barred by IHRA (*Mein*), but a claim for the intentional infliction of emotional distress premised on traditional tort principles is not barred by IHRA even though the tort occurs in an employment setting. *See, e.g., Milton v. Illinois Bell,* 101 Ill.App.3d 75, 56 Ill.Dec. 497, 427 N.E.2d 829 (1st Dist.1981). *Cf. Stoecklein v. Illinois Tool Works,* 589 F.Supp. 139, 146 (N.D.Ill.1984). Because IHRA does not preempt all common law tort claims, Defendants' motion to dismiss Counts V and VI on a preemption theory is denied.

## IV.

Defendants next contend that Count V fails to state a claim for the intentional infliction of severe emotional distress. They also contend that Counts V and VI are barred by the applicable period of limitation (two years for personal injury). Defendants are wrong on both counts.

■ In order to state a claim for the intentional infliction of emotional distress, Clay must plead and prove Defendants 1) intentionally engaged in 2) extreme and outrageous conduct 3) causing her to suffer 4) severe emotional distress. *Public Finance Corp. v. Davis,* 66 Ill.2d 85, 4 Ill.Dec. 652, 360 N.E.2d 765 (1977); *Farnor v. Irmco Corp.,* 73 Ill.App.3d 851, 29 Ill. Dec. 894, 898, 392 N.E.2d 591 (1st Dist. 1979). The conduct of the Defendants must exceed "all possible bounds of decency" and the distress must be so severe "that no reasonable man could be expected to endure it." *Public Finance,* 4 Ill.Dec. 652, 360 N.E.2d at 767. In the employment setting, conduct must be particularly extreme to serve as the basis for an emotional distress claim.

Personality conflicts, questioning of job performance and job transfer, whether for disciplinary or management purposes are unavoidable aspects of employment. Frequently they produce concern and distress for the affected employee. Yet, if the distress from such incidents was

deemed so severe that no reasonable person could be expected to endure it, nearly all employees would have a cause of action for intentional infliction of severe emotional distress.

*Heying v. Simonaitis*, 126 Ill.App.3d 157, 81 Ill.Dec. 335, 342, 466 N.E.2d 1137, 1144 (1984).

■ Taking the allegations contained on the complaint as true for the purposes of this motion to dismiss (*see Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984)), the Court believes Count V states a claim for relief. Clay alleges Defendants intentionally 1) denied her employment benefits (¶ 25), 2) coerced her into participating in a sexual relationship (¶ 18–19), 3) subjected her to sex-based remarks and offensive touchings after the conclusion of the coerced sexual relationship (¶ 10) and 4) discriminated against her generally because of her sex (¶ 18, 26). These allegations, say Defendants, "fall far short" of stating an actionable claim.

Clay's allegations, if true, evince a pattern of conduct by Defendants of unjustifiable abuse. Such acts go far beyond the ordinary indignities one can be expected to endure in the workplace. *Cf. Heying*, 81 Ill.Dec. at 342, 466 N.E.2d at 1144. The allegations are all the more disturbing when they are considered against the backdrop of the later acts which Defendants are alleged to have committed. Clay alleges the Defendants continued to harass her sexually even after she terminated a coerced sexual relationship with both of them. The facts as alleged in this case are simply unlike those in any of the cases cited by Defendants. Consequently, the motion to dismiss Count V for failure to state a claim for relief is denied.

Illinois has a two year statute of limitation for personal injury actions. Ill.Rev. Stat. ch. 110, § 13–202 (1985). Defendants next contend that both Counts V and VI are barred by the two year period of limitation for tort actions. The Court again disagrees.

■ Clay alleges that Defendants' pattern of harassing conduct continued from January, 1983 until her discharge in October, 1984. *See* Complt Ct III at ¶ 18–20. Taking those allegations as true, Count V is timely. *See Starcevich v. City of Farmington*, 110 Ill.App.3d 1074, 66 Ill.Dec. 811, 814, 443 N.E.2d 737, 740 (3d Dist.1982) (for tort involving repeated injury, statute of limitation begins to run from date of last injury or date of last tortious act). The same result follows for the battery claim alleged in Count VI. The Complaint plainly alleges that Defendants' offensive touchings continued until 1984. *See* Complt Ct III at 11. The Court notes, however, that Defendants may attack the dates alleged in the Complaint on a motion for summary judgment or at trial. Defendants' motion to dismiss Counts V and VI as untimely is denied.

### V.

■ Count VII alleges that Clay was fired in violation of Quartet's long-standing custom and implied policy of terminating employees only for cause. Complt at Ct VII ¶ 11. An employment relationship which does not specify a duration is an "at will" relationship. *Bartinikas v. Clarklift of Chicago North, Inc.*, 508 F.Supp. 959, 960 (N.D.Ill.1981). Clay does not allege she was anything more than an "at will" employee. "At will" employment is a tenuous thing; either employer or employee may terminate the relationship for any reason or for no reason at all. *Loucks v. Star City Glass Co.*, 551 F.2d 745, 747 (CA7 1977). Clay's failure to allege she was anything more than an "at will" employee is fatal to her wrongful discharge claim. Defendants' motion to dismiss Count VII is granted.

### VI.

In sum, then, Defendants' motion to dismiss Counts I, II, III, V and VI is denied. Defendants' motion to dismiss Count VII, however, is granted. Plaintiff is ordered to file an amended complaint conforming with this Order and the parties are ordered to

file a joint written status report pertaining to discovery. Both filings must be made within fourteen days of the date of this Order. *See* Fed.R.Civ.P. 26(f). The joint status report filed by the parties shall address the following issues:

1) The extent of discovery taken thus far;

2) a statement of the remaining issues as they *now* appear in the lawsuit;

3) a proposed plan and schedule of discovery with *specific* dates for production, depositions and the cut-off of all discovery;

4) any anticipated difficulties or obstructions that may delay the course of discovery (*e.g.*, motions for protective orders or objections).

Upon receipt of the parties' joint status report the Court will, by minute order, set a date for submission of the final pretrial Order.

IT IS SO ORDERED.