**Hanna T. PIECH, Plaintiff,**

v.

**ARTHUR ANDERSEN & CO., S.C., (Societe Cooperative, a Swiss Partnership), and Arthur Andersen & Co. (an Illinois Partnership), Defendants.**

No. 93 C 3801.

United States District Court, N.D. Illinois, E.D.

Jan. 7, 1994.

Neil T. Goltermann, Hill, Gilstrap, Goetz, Moorhead, White & Bodoin, Chicago, IL, John M. Rogers, Frank Hill, Hill, Heard, Gilstrap, Goetz & Moorhead, Arlington, TX, for plaintiff.

John A. McDonald, Keck, Mahin & Cate, Chicago, IL, for defendant Arthur Anderson & Co., an Illinois Partnership.

John A. McDonald, Donald James McNeil and John Allen Klages of Keck, Mahin & Cate, Chicago, IL, for defendant Arthur Anderson & Co. Societe Cooperative.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

Hanna T. Piech filed suit against Arthur Andersen & Co., S.C., ("AASC") and Arthur Andersen & Co. ("AA & Co.") alleging Title VII violations, breach of contract, and intentional infliction of emotional distress.[1] AA & Co. moved to dismiss the complaint. In re-

sponse, Piech filed a brief in opposition and an amended complaint. The defendants now collectively move to dismiss portions of the amended complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

A plaintiff fails to state a claim upon which relief may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Leahy v. Board of Trustees of Community College Dist. No. 508*, 912 F.2d 917, 921 (7th Cir.1990). A district court must accept as true all well-pleaded allegations and draw all reasonable inferences in the light most favorable to the plaintiff. *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323, 1326 (7th Cir.1990). This Court accepts the following facts as true for purposes of this motion.

## I. FACTS

AA & Co. employed Piech in its Tax Division in April 1988. Piech accepted the position after interviewing with James Lynch, the head of the company's firm-wide Mergers & Acquisitions Group.[3] AA & Co. agreed to compensate Piech at a "stated sum per year," and her employment was renewed, at least annually, until 1992.

In 1989, AA & Co. offered Piech a position in its State & Local Tax Group. Piech declined because the Mergers & Acquisitions Group assignment best suited her career goals. In 1990, while Piech was on disability leave for childbirth, AA & Co. considered promoting her to manager. AA & Co. denied Piech the promotion and opted to promote instead a female employee who is alleged to have been less qualified, involved in a romantic relationship with a partner in the decision-making process, and knowledgeable

---

1. Piech's Title VII claims include allegations of hostile work environment and *quid pro quo* sexual harassment, pregnancy discrimination, gender discrimination, disparate impact, and retaliation.

2. The defendants move to dismiss one Title VII claim, the breach of contract claim, the intentional infliction of emotional distress claim, and to strike the allegations of constructive discharge. The defendants label the Title VII claim as the "favored female co-worker" claim. Piech

labels the same claim as the "reverse *quid pro quo* " claim.

3. AA & Co. says that AASC did not employ Piech and warns that if Piech does not voluntarily dismiss it from the suit, AASC will file a Rule 12 motion. Piech responds that AASC has waived this argument as a ground for dismissal. No motion to dismiss on this ground has been filed, and this Court refrains from entering an advisory opinion on this issue.

of inappropriate male partner sexual conduct. AA & Co., however, subsequently promoted Piech to manager in spring 1991.

In September 1991, while Piech was pregnant with her second child, the Tax division was reorganized and numerous managers, including newly promoted managers, received new clients. AA & Co. did not assign any new clients to Piech, allegedly because she was due to take disability leave. Piech expressed her concern about this decision. While Piech was on disability leave for the birth of her second child, AA & Co. reassigned her to the State & Local Tax Group, the same group to which she had declined reassignment approximately two years earlier. AA & Co. informed Piech of the reassignment upon her return from disability leave, and it was made clear that if she did not accept the reassignment, she would have no future at the firm. In May 1992, Piech resigned. This suit followed.

## II. "REVERSE *QUID PRO QUO*"/"FAVORED FEMALE CO–WORKER" CLAIM

█ The defendants first move to dismiss what they have labelled the "Claimed 'Favoritism' of Female Colleague (Title VII)" claim or the "favored female co-worker claim." In support of this claim, Piech alleges that a less qualified, single female co-worker was promoted to manager instead of her because of the "favored" female's knowledge of inappropriate male partner sexual conduct and her amorous relationship with a partner in the decision-making process. She also alleges that "it was necessary for women so situated to grant sexual favors . . . and, in part, because [she] did not do so, she was denied promotion." The defendants contend that these allegations are not enough to state a Title VII sex discrimination claim because Title VII does not make actionable claims based on allegations that a "favored female" colleague was given preferential employment treatment. *DeCintio v. Westchester County Medical Ctr.*, 807 F.2d 304 (2d Cir.1986). Piech argues that she has properly pleaded a Title VII claim for "Sexual Harassment— Reverse *Quid Pro Quo*," and that Title VII affords relief for sex-based discrimination to

a woman who alleges that she was denied employment benefits in favor of another woman who had a sexual relationship with a partner in the decision-making process. *King v. Palmer*, 778 F.2d 878 (D.C.Cir.1985).

No court recognizes a claim entitled "reverse *quid pro quo*," and neither will this court. The differing titles placed on this Title VII claim have caused much confusion among the parties. The effect has been to obfuscate the critical distinctions between two very different types of discrimination proscribed under Title VII—"economic" or "tangible" discrimination (*i.e.*, sex discrimination resulting in tangible, economic loss such as a job or promotion) and sexual harassment (*i.e.*, sexual misconduct either linked to an economic *quid pro quo* or resulting in a hostile work environment).

The language of Title VII prohibits discrimination in employment because of an individual's sex, or simply put, sex discrimination. 42 U.S.C. § 2000e–2(a)(1) (1988). The way plaintiffs traditionally proved sex discrimination was through direct or circumstantial evidence that the applicant's or employee's sex was a factor in an employer's adverse employment decision, such as the denial of a job or promotion opportunity or other employment benefit available to persons of the opposite sex. In *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Supreme Court recognized sexual harassment as a form of sex discrimination prohibited by Title VII. Sexual harassment includes the "hostile work environment" variety and the "*quid pro quo*" variety. *Id.* at 65, 106 S.Ct. at 2405. Hostile work environment arises when the alleged sexual harassment "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Id.* Quid pro quo sexual harassment describes situations in which submission to sexual demands is made a condition of tangible employment benefits. *Dockter v. Rudolf Wolff Futures, Inc.*, 913 F.2d 456, 461 (7th Cir.1990).

The issue on this motion to dismiss is whether the factual allegations contained in the complaint state *a* cause of action under

Title VII. More specifically, the issue is whether Piech's allegations that a female co-worker's romantic relationship with a decision-maker resulted in the co-worker's promotion and Piech's denial of promotion state a claim for "economic" discrimination or *quid pro quo* sexual harassment. To date, the Seventh Circuit has not addressed this issue. The defendants, however, urge that the Second Circuit's decision in *DeCintio v. Westchester County Medical Center*, 807 F.2d 304 (2nd Cir.1986), is dispositive and warrants dismissal of this Title VII claim.

In *DeCintio*, seven male physical therapists brought a Title VII sex discrimination claim against their employer. The plaintiffs alleged that the program administrator recommended national board registration as a job requirement for the position to which they sought promotion in order to disqualify them as applicants so that the program administrator could then hire a female with whom he had a consensual, romantic relationship. *DeCintio*, 807 F.2d at 305. The Second Circuit held that the plaintiffs failed to state a Title VII sex discrimination claim. The court noted that the plaintiffs were not prejudiced because they were males but because the decision-maker preferred his paramour; the males faced the same situation as any woman other than the paramour because of the relationship. *Id.* at 308. The court emphasized that the "proscribed differentiation under Title VII ... must be a distinction based on a person's sex, not on his or her sexual affiliations." *Id.* at 306–07. The court could find "no justification for defining 'sex,' for Title VII purposes, so broadly as to include an ongoing, voluntary, romantic engagement." *Id.* at 307.

Essentially, the *DeCintio* court defined "sex," for purposes of Title VII claims, as membership in a class delineated by "gender," rather than a class delineated by sexual

activity regardless of gender or sexual affiliations. *Id.* at 306–07. Significantly, the Seventh Circuit has refused to include sexual identity in the definition of "sex," preferring to adhere to the "traditional" definition of "gender" discrimination for Title VII purposes. *See, e.g., Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081 (7th Cir.1984) (prohibiting sex discrimination implies it is unlawful to discriminate against women because they are women and men because they are men). The law in this circuit is that sex discrimination for Title VII purposes is limited to gender discrimination.

As in *DeCintio*, Piech does not allege that she was prejudiced in the promotion decision-making process because she was female but because the decision-maker preferred his paramour. Piech was in the same position as any other male or female employee who was not involved in a sexual relationship with one of the decision-makers and lacked the knowledge of illicit sexual conduct. Consequently, Piech does not allege that she suffered an adverse employment decision because of her sex.[4]

Piech, however, does allege that it was generally necessary for women to grant sexual favors to decision-makers for professional advancement. She says she was not extended certain employment benefits (including promotion) because, unlike the favored employee, she did not grant sexual favors. Piech's allegations fit the classic definition of *quid pro quo* sexual harassment—submission to sexual demands is alleged to have been a condition to receiving tangible employment benefits. *See Dockter*, 913 F.2d at 461; *Priest v. Rotary*, 634 F.Supp. 571 (N.D.Cal. 1986) (Title VII is violated when an employer awards preferential treatment to female employees who submit to his sexual advances or when his conduct implies that job benefits

---

4. Piech erroneously relies on *King v. Palmer*, 778 F.2d 878 (D.C.Cir.1985), to support her argument that she has stated a Title VII sex discrimination claim. In *King*, a female employee brought an action under Title VII alleging she was denied a promotion which was awarded to another woman because of the other woman's intimate relationship with one of the decision-makers. *Id.* at 878–79. Whether these allegations stated a Title VII sex discrimination claim

was never disputed by the parties in *King*, nor decided by either the district or appellate courts. In fact, the D.C. Circuit denied the motion for rehearing *en banc* on this issue because the parties failed to raise or brief the issue on appeal.

This opinion does not affect Piech's Title VII gender discrimination claim based on a male co-worker's promotion, which was not challenged by the defendants.

will be conditioned on an employee's endurance of his conduct).[5] Piech's allegations regarding the favored female co-worker who received a promotion while involved romantically with a decision-maker may be considered simply circumstantial evidence that her employer conditioned employment benefits on the granting of sexual favors. *Toscano v. Nimmo*, 570 F.Supp. 1197 (D.Del.1983) (plaintiff proved that the conditioning of job benefits through circumstantial evidence of a sexual affair between the decision-maker and the applicant selected for the position); 29 C.F.R. § 1604.11(g) (1986) ("Where employment opportunities or benefits are granted because of an individual's submission to the employer's sexual advances or requests for sexual favors, the employer may be held liable for unlawful sex discrimination against other persons who were qualified for but denied the employment opportunity or benefit."). Consequently, the defendants' motion to dismiss Piech's *quid pro quo* sexual harassment claim is denied.

## III. BREACH OF CONTRACT

Piech includes in her complaint a supplemental state-law claim for breach of contract. Piech says she was motivated to accept AA & Co.'s employment offer by the opportunity to work in the Mergers & Acquisitions Group and that AA & Co. agreed to compensate Piech at a stated sum per year, which was renewed annually until her transfer to the State & Local Tax Group in early 1992. Piech also says AA & Co. promised that she would not be required to rotate out of the Mergers & Acquisitions Group and would be permanently assigned to that group. Piech claims that the defendants breached her employment contract when they transferred her from Mergers & Acquisitions to the State & Local Tax Group without her consent.

The defendants maintain that Piech does not state a claim for breach of contract.

According to the defendants, it takes more than an agreement to compensate Piech at a stated sum per year and an annual renewal of employment to create contractual employment as opposed to employment at will. They essentially argue that their decision to transfer, assuming as Piech does that it amounted to a constructive discharge, was the same as a discharge for no cause which has no legal ramifications in the employment-at-will context.

■ Illinois law applies here. Generally, an oral or written contract that does not specify the duration of the employment is presumed to be terminable at will by either party, and an employment-at-will relationship may be terminated for good cause, bad cause, or no cause at all. *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 115 Ill.2d 482, 106 Ill. Dec. 8, 11, 505 N.E.2d 314, 317 (1987); *Pudil v. Smart Buy, Inc.*, 607 F.Supp. 440, 442 (N.D.Ill.1985). This presumption of employment at will, however, may be overcome by demonstrating that the parties intended to contract otherwise. *Duldulao*, 106 Ill.Dec. at 12, 505 N.E.2d at 318.

■ Piech relies primarily on *Duldulao* and argues that her continued work for AA & Co. was sufficient consideration for AA & Co.'s employment promise not to rotate her out of the Mergers & Acquisitions Group and, consequently, a valid contract for employment was formed. Certainly, one can extract from *Duldulao* a rule of law that an employee's continued work is sufficient consideration for employment promises to form a valid contract under traditional contract principles. *Duldulao*, 106 Ill.Dec. at 12, 505 N.E.2d at 318. And, what Piech implicitly argues is that she had a contract for employment only in AA & Co.'s Mergers & Acquisitions Group. The dispositive issue here, however, is whether the facts alleged indicate

---

**5.** The *Priest* court refers to this type of employer behavior as "job detriment," which it defines as "the conditioning of tangible job benefits on acquiescence to requests for sexual favors or other conduct of a sexual nature," *i.e.*, *quid pro quo* sexual harassment. *Id.* at 581. The court found a Title VII violation because the plaintiff showed that the employer's sexual partner and employee's who tolerated his conduct received advan-

tages. *Id.* Contrary to the plaintiff's belief, the *Priest* court did not recognize a sex discrimination claim based on another's sexual relationship. Rather, the court recognized a Title VII *quid pro quo* claim based on proof of a co-worker's submission to the employer's sexual advances as evidence of conditioning employment benefits on the granting of sexual favors.

that the parties intended to contract for something other than employment at will in the Mergers & Acquisitions Group. The complaint here is devoid of any allegations of promises regarding the duration of Piech's employment in the Mergers & Acquisitions Groups or any procedures which must be followed prior to terminating her employment. Consequently, there are no allegations from which this Court can reasonably conclude that AA & Co. offered Piech something other than employment at will. The defendant's motion to dismiss the breach of contract claim is granted.

## IV. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ The defendants next move to dismiss Piech's state-law claim for intentional infliction of emotional distress. To state a cause of action for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the plaintiff suffered severe emotional distress; and (3) the defendant knew severe emotional distress was certain or substantially certain to result. *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 4 Ill.Dec. 652, 360 N.E.2d 765 (1976). The disputed issue here is whether the alleged conduct by the defendants is of such an "extreme and outrageous" nature to form the basis for recovery under intentional infliction of emotional distress. The defendants maintain that the alleged acts of sex discrimination and harassment are not so outrageous that they "go beyond the bounds of decency" in the workplace and do not form a pattern or level of abuse sufficient to state a claim for intentional infliction of emotional distress.

■ "Extreme and outrageous" is a difficult term to label with a precise definition. Liability for "extreme and outrageous" conduct has been found only where the conduct is so outrageous in nature and so extreme in degree that it goes beyond all possible bounds of human decency and is intolerable in a civilized society. *Id.* 4 Ill.Dec. at 654, 360 N.E.2d at 767 (quoting Restatement (Second) of Torts § 46, Comment d (1965)). Liability under the theory of intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* When, as here, the defendant has some degree of power over the plaintiff, the severity of the conduct that plaintiff need allege decreases as the defendant's level of control increases. *McGrath v. Fahey*, 126 Ill.2d 78, 127 Ill.Dec. 724, 727, 533 N.E.2d 806, 809 (1988). Nonetheless, in the employment setting, the conduct complained of must be particularly outrageous. *Clay v. Quartet Mfg. Co.*, 644 F.Supp. 56, 61 (N.D.Ill.1986). The work setting contemplates a degree of teasing and taunting that in other circumstances might be considered cruel and outrageous. *Wilson v. Monarch Paper Co.*, 939 F.2d 1138 (5th Cir.1991). Furthermore, personality conflicts and job transfers are unavoidable aspects of the modern work place and may cause stress for the employee. *Clay*, 644 F.Supp. at 61. Allegations of job-related stress, however, do not state a claim for intentional infliction of emotional distress; otherwise, nearly all employees would have a cause of action. *Id.* at 62.

■ Piech alleges that she was: (1) repeatedly discriminated against for taking disability leave for her pregnancies; (2) continually exposed to a work atmosphere consisting of offensive and tasteless humor of a sexual nature, references to the female anatomy, and rumors of male partner sexual misconduct; (3) given demeaning work assignments; (4) sexually harassed and discriminated against regarding promotions and transfers; and (5) forced to endure retribution and harassment designed to prevent women from attaining the status of partner. These allegations are sufficient to state a Title VII sex discrimination claim. A claim for intentional infliction of emotional distress, however, requires more than what is required for sexual harassment. *See Pavilon v. Kaferly*, 204 Ill.App.3d 235, 149 Ill.Dec. 549, 561 N.E.2d 1245 (1990); *Bailey v. Unocal Corp.*, 700 F.Supp. 396 (N.D.Ill.1988); *accord Monarch Paper*, 939 F.2d at 1141 (more is required to prove intentional infliction of emotional distress than usual ADEA claim).

■ Claims for intentional infliction of emotional distress in the employment setting have generally involved circumstances be-

yond what can be considered a typical employment dispute better addressed in a Title VII or equivalent suit. *See, e.g., Dean v. Ford Motor Credit Co.,* 885 F.2d 300 (5th Cir.1989) (supervisor intentionally placed checks in plaintiff's purse so she would appear as a thief and fear criminal charges); *Monarch Paper,* 939 F.2d at 1141 (former vice-president and assistant to the president with thirty years experience demoted to housekeeping chores and menial janitorial jobs under supervisors formerly his subordinates); *Bailey,* 700 F.Supp. at 399 (defendant exposed himself to plaintiff and subjected plaintiff to unwelcome sexual advances, sexual comments containing sexual innuendos, and repeated requests and propositions for sexual behavior); *Pavilon v. Kaferly,* 204 Ill.App.3d 235, 149 Ill.Dec. 549, 561 N.E.2d 1245 (1990) (defendant knew plaintiff was susceptible to emotional distress, pressured plaintiff for dates, offered plaintiff money for sex, threatened to kill and rape plaintiff and threatened to challenge custody of her child); *Milton v. Illinois Bell Telephone Co.,* 101 Ill.App.3d 75, 56 Ill.Dec. 497, 427 N.E.2d 829 (1981) (plaintiff coerced to falsify work reports, an illegal activity); *Clay,* 644 F.Supp. at 61 (coercive sexual relationship). Illinois Appellate Courts have affirmed dismissals of intentional infliction of emotional distress claims alleging facts even more "outrageous" than here. *See, e.g., Miller v. Equitable Life Assurance Soc'y,* 181 Ill.App.3d 954, 130 Ill. Dec. 558, 537 N.E.2d 887 (1989) (plaintiff alleged she was surrounded by supervisors and co-workers who were inconsiderate, rude, vulgar, uncooperative, unprofessional, and unfair; agent touched plaintiff's breast; another agent stated that he wanted her; and a manager suggested she use sex to sell insurance); *Morrison v. Sandell,* 112 Ill. App.3d 1057, 68 Ill.Dec. 556, 446 N.E.2d 290 (1983) (toilet tissue and human waste matter was placed in a drawer the plaintiff would open).

Piech's most extreme allegation is that she was subjected to one isolated proposition or "advance" over four years. A single isolated incident is not extreme and outrageous conduct. *Morrison,* 68 Ill.Dec. at 558, 446 N.E.2d at 292. Otherwise, Piech was subjected to sexual humor, references to female anatomy, and general discriminatory conduct. Although not condoned, such conduct does not shock the conscience of a reasonable employee. If true, Piech states a claim for sexual harassment but not intentional infliction of emotional distress. Piech's allegations lack the systematic and intentional actions designed to humiliate the plaintiff in *Monarch* and the check incident in *Dean.* Likewise, Piech's allegations lack the coercion to engage in illegal activity like *Milton* or the coercive sexual relationship of *Clay* or the pattern of threats of rape or death or offers of money for sex as in *Pavilon.* The defendants' motion to dismiss this claim is granted.

## V. CONSTRUCTIVE DISCHARGE

 Finally, the defendants move to strike all allegations of constructive discharge. A constructive discharge constitutes an adverse employment decision for purposes of establishing a *prima facie* case of discrimination under Title VII and, if proved, entitles a plaintiff to back pay. *Brooms v. Regal Tube Co.,* 881 F.2d 412, 423 (7th Cir.1989). An employee is constructively discharged when the conditions surrounding his job assignment are so untenable that they render his continued employment an impossibility and effectively force the employee into an involuntary resignation. *Henn v. National Geographic Soc'y,* 819 F.2d 824, 829 (7th Cir. 1987). Piech says that her transfer from the Mergers & Acquisitions Group to the State & Local Tax Group was a *de facto* demotion and virtually eliminated any chance of her making partner. She alleges that AA & Co. made clear that if she did not accept the reassignment "she would be effectively terminated." She further alleges that once transferred, she was not given appropriate work assignments. Piech claims that the "onerous and demeaning conditions," which include the sexual jokes and harassment, compelled her to resign.

 Although Piech may be sincere when she says that the conditions forced her to resign, constructive discharge is established only if the conditions would compel a reasonable person to resign. *Brooms,* 881 F.2d at

423. "An employee may not be unreasonably sensitive to his working environment." *Id.* (quoting *Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1256 (8th Cir.1981)). This Circuit requires a reasonable employee to remain on the job and seek legal redress "unless confronted with an 'aggravated situation' beyond 'ordinary' discrimination." *Id.* at 423. The complaint is devoid of offensive conduct outside the realm of "ordinary" discrimination. Piech, however, insists that the transfer to the State & Local Tax Group was a materially adverse change in the terms and conditions of her employment, not just an inconvenience or alteration of job responsibilities, which is actionable under Title VII. *Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993).

In *Crady,* the Seventh Circuit affirmed a district court's finding as a matter of law that the employee's transfer to a management-level position with the same salary and benefits was not a materially adverse employment action for purposes of ADEA. *Id.* at 135–36. The court noted that a materially adverse change may be indicated by "a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* at 136. The court, however, did not decide whether the new job assignment constructively discharged the plaintiff. Rather, the court noted in a footnote that "[t]he clear trend of authority is to require that a transfer with no change in wages or benefits amount to a 'constructive discharge' to be actionable as an 'adverse employment action.'" *Id.* at 135 n. 1.

As this Court reads *Crady,* not all materially adverse employment actions (though actionable under Title VII) amount to a constructive discharge. Piech sufficiently alleges "indicia" of a materially adverse change in employment resulting from her transfer. Piech also claims that any reasonable employee would have resigned under the circumstances. Whether the circumstances complained of go "beyond 'ordinary' discrimination" and would compel a reasonable employee in Piech's position to contemplate immediate resignation is a question more appropriately answered by a trier of fact. This Court will await the fruits of discovery and revisit the issue if raised on summary judgment. The motion to strike the allegations of constructive discharge is denied.

## VI. CONCLUSION

Defendants' motion to dismiss the Title VII *quid pro quo* claim is denied, as is the motion to strike the allegations of constructive discharge. The motion to dismiss the breach of contract and intentional infliction of emotional distress claims is granted.