807 F.2d 304
 42 Fair Empl.Prac.Cas. 921,
42 Empl. Prac. Dec. P 36,785, 55 USLW 2348
 Anthony J. DeCINTIO, Peter A. Piazza, Michael A. Garayua,
Jose P. Gomes, Angel A. Garayua, Winston P. David
and Daniel A. Samuels, Plaintiffs-Appellees,
v.
WESTCHESTER COUNTY MEDICAL CENTER; County of Westchester,
Defendants- Appellants.
 No. 161, Docket 86-7522.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 15, 1986.
Decided Dec. 15, 1986.
 
 Anne Golden, White Plains, N.Y. (Silverman & Sapir, White Plains, N.Y., Donald L. Sapir, White Plains, N.Y., of counsel) for plaintiffs-appellees.
 Colleen Lundwall Kellman, Asst. County Atty., White Plains, N.Y. (Kenneth E. Powell, Deputy County Atty., Henry J. Logan, Westchester County Atty., White Plains, N.Y., of counsel), for defendants-appellants.
 Before OAKES, MINER and MAHONEY, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Appellees Anthony J. DeCintio, Peter A. Piazza, Michael A. Garayua, Jose P. Gomes, Angel A. Garayua, Winston P. David and Daniel A. Samuels, seven male respiratory therapists employed by appellant Westchester County Medical Center ("WCMC"), brought suit in the United States District Court for the Southern District of New York (Brieant, J.), alleging that WCMC and appellant Westchester County had discriminated against them on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-2 (1982), and the Equal Pay Act, 29 U.S.C. Sec. 206(d)(1) (1982). The gravamen of their complaint was that they had been unfairly disqualified from promotion to the position of Assistant Chief Respiratory Therapist. They alleged that when the Program Administrator of the Respiratory Therapy Department, James Ryan, initiated the suggestion that registration by the National Board of Respiratory Therapists ("NBRT") be required of all applicants for the Assistant Chief position, he did so in order to disqualify them and to enable him to hire Jean Guagenti, a woman with whom he was engaged in a romantic relationship. The district court held that the provisions of both Title VII and the Equal Pay Act were violated and awarded damages to appellees and legal fees to their attorneys. We reverse.
 
 I. BACKGROUND
 
 2
 In April 1982, WCMC opened a regional Neonatal Intensive Care Unit ("Neonatal ICU") for the treatment of critically ill newborns. The unit was staffed under the direction of Dr. Harry Dweck, who was also Chief of the Division of Neonatal Perinatal Medicine at New York Medical School. The staff consisted of nurses, therapists and lab technicians. WCMC decided to supplement the staff of the Neonatal ICU by adding a respiratory therapist with supervisory responsibilities, at a higher salary than other staff respiratory therapists. To that end, WCMC announced the creation of a position for an additional "Assistant Chief of Respiratory Therapy," to be assigned to the Neonatal ICU. Specifications for the position included a "special requirement" that the applicant be registered with the NBRT.[1] Registration by the NBRT previously had not been a requirement for the Assistant Chief position, nor was it required of the head of the Respiratory Therapy Department.
 
 
 3
 None of the appellees, all of whom were male staff respiratory therapists at WCMC, was registered by the NBRT. Consequently, none was qualified to apply for the position. On April 26, 1982, Jean Guagenti, a female respiratory therapist registered by the NBRT, was hired for the new position by the Westchester County Commissioner of Hospitals. The express recommendation of Ryan, the Program Administrator of the Respiratory Therapy Department, brought about her employment. Guagenti formerly had been employed at WCMC as a staff respiratory therapist until January 1982, when she left WCMC for a position at Danbury Hospital. After her return in April 1982, she worked in the Neonatal ICU until October 1982, when she was reassigned to another department. She resigned from WCMC on August 14, 1983.
 
 
 4
 On May 17, 1982, appellee Anthony DeCintio filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), charging Westchester County with sex discrimination arising from the hiring of Guagenti for the Assistant Chief Respiratory Therapist position. He alleged, inter alia, that the registration requirement was created in order to exclude him from consideration for the position and that the position specifically was created for Guagenti. The EEOC referred the complaint to the New York State Division on Human Rights ("State Division") for review of the merits of the case. On March 24, 1983, the other six appellees filed similar complaints with the State Division. The State Division's investigation resulted in dismissal of the complaint, based on a lack of credible evidence that the certification requirement was pretextual. The EEOC adopted this finding.
 
 
 5
 After the appropriate review of the administrative determinations, appellees brought this action in the district court, alleging violations of Title VII and the Equal Pay Act. After a two-day trial, the district court determined that: 1) "[p]ersons other than" Ryan concluded that a respiratory therapist was needed in the Neonatal ICU; 2) Ryan initiated the creation of a second Assistant Chief position; 3) Ryan initiated the addition of a registration requirement for that position; 4) the new requirement was "a pretext and a part of a scheme or plan" on Ryan's part to obtain the position for Guagenti; 5) Ryan and Guagenti had been engaged in an ongoing, consensual, romantic relationship at the time Guagenti was hired to be an Assistant Chief at WCMC; and 6) appellants paid Guagenti more than appellees for equal work when the performance of their respective jobs required substantially equal skill, effort, or responsibilities performed under similar working conditions. Based on these findings, the district court held that appellants had violated the Equal Pay Act, 29 U.S.C. Sec. 206(d), and Title VII, 42 U.S.C. Sec. 2000e. The court awarded damages and attorney's fees to each appellee. This appeal followed.
 
 II. DISCUSSION
 
 6
 The dispositive issue in this action is whether, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e (1982), the phrase "discrimination on the basis of sex" encompasses disparate treatment premised not on one's gender, but rather on a romantic relationship between an employer and a person preferentially hired. The meaning of "sex," for Title VII purposes, thereby would be expanded to include "sexual liaisons" and "sexual attractions." Such an overbroad definition is wholly unwarranted.
 
 
 7
 Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. Sec. 2000e-2(a)(1). As the Supreme Court noted in Meritor Savings Bank, FSB v. Vinson, --- U.S. ----, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), because the word "sex" was added to Title VII shortly before passage, "we are left with little legislative history to guide us in interpreting the Act's prohibition against discrimination based on 'sex.' " Id. at ----, 106 S.Ct. at 2404. However, the other categories afforded protection under Title VII refer to a person's status as a member of a particular race, color, religion or nationality. "Sex," when read in this context, logically could only refer to membership in a class delineated by gender, rather than sexual activity regardless of gender. As the Supreme Court noted in Trans World Airlines v. Hardison, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977), "[t]he emphasis of both the language and the legislative history of [Title VII] is on eliminating discrimination in employment; similarly situated employees are not to be treated differently solely because they differ with respect to race, color, religion, sex, or national origin." Id. at 71, 97 S.Ct. at 2270 (emphasis added). The proscribed differentiation under Title VII, therefore, must be a distinction based on a person's sex, not on his or her sexual affiliations. See Los Angeles Department of Water & Power v. Manhart, 435 U.S. 702, 707 n. 13, 98 S.Ct. 1370, 1375 n. 13, 55 L.Ed.2d 657 (1978) (quoting Sprogis v. United Air Lines, 444 F.2d 1194, 1198 (7th Cir.) (Title VII was intended to "strike at the entire spectrum of disparate treatment of men and women"), cert. denied, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971)); see also Meritor, 106 S.Ct. at 2404 (quoting same).
 
 
 8
 In King v. Palmer, 778 F.2d 878 (D.C.Cir.1985), the D.C.Circuit implicitly recognized a Title VII action alleging discrimination premised on a voluntary sexual relationship. The court noted, however, that the question whether a consensual sexual relationship can form the basis of a Title VII claim had not been presented on appeal. Id. at 880. Additionally, six judges of that court, in denying a suggestion for rehearing en banc and a motion by the government regarding the filing of an amicus brief, emphasized that the applicability of Title VII to the facts before them was not raised on appeal, and thus was not the proper subject of a rehearing en banc. Id. at 883. To the extent that King and cases following King, e.g., Kersul v. Skulls Angels Inc., 130 Misc.2d 345, 495 N.Y.S.2d 886 (Sup.Ct.1985), can be interpreted as recognizing Title VII claims for non-gender based sex discrimination, we decline to adopt such a broad extension of Title VII protection.
 
 
 9
 Title VII claims have been employed successfully to combat instances of sex discrimination with respect to terms and conditions of employment, e.g., Mills v. Ford Motor Co., 800 F.2d 635 (6th Cir.1986), as well as sexual harassment in the workplace, e.g., Meritor, --- U.S. ----, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) ("hostile environment" sexual harassment); see generally Annot., 78 A.L.R.Fed. 252 (1986). In all of these cases, however, there existed a causal connection between the gender of the individual or class and the resultant preference or disparity. Many courts have limited the word "sex" to its "traditional definition," Sommers v. Budget Marketing, Inc., 667 F.2d 748, 750 (8th Cir.1982), and refused to extend Title VII proscriptions beyond gender-based discrimination. See, e.g. Ulane v. Eastern Airlines, 742 F.2d 1081 (7th Cir.1984) (transsexuality), cert. denied, 471 U.S. 1017, 105 S.Ct. 2032, 85 L.Ed.2d 304 (1985); Sommers v. Budget Marketing, Inc., 667 F.2d 748 (8th Cir.1982) (same); DeSantis v. Pacific Telephone & Telegraph Co., 608 F.2d 327 (9th Cir.1979) (homosexuality); Smith v. Liberty Mutual Insurance Co., 569 F.2d 325 (5th Cir.1978) (effeminacy). We can adduce no justification for defining "sex," for Title VII purposes, so broadly as to include an ongoing, voluntary, romantic engagement.
 
 
 10
 Toscano v. Nimmo, 570 F.Supp. 1197 (D.Del.1983), relied on by appellees, does not mandate a contrary result. In Toscano, a female employee alleged, and the district court found, that the granting of sexual favors was a condition to receiving promotion, in violation of Title VII. Although the district court permitted the female employee to prove her claim with circumstantial evidence of the sexual relationship between the employer and the successful applicant, the claim itself was premised on the coercive nature of the employer's acts, rather than the fact of the relationship itself. The Title VII action at issue in Toscano, therefore, was the substantial equivalent of a "sexual harassment" suit. The decision in Toscano lends no support to the contention that a voluntary amorous involvement may form the basis of a Title VII claim.
 
 
 11
 The EEOC's guidelines fail to buttress appellees' contentions. The guidelines provide that "[w]here employment opportunities or benefits are granted because of an individual's submission to the employer's sexual advances or requests for sexual favors, the employer may be held liable for unlawful sex discrimination against other persons who were qualified for but denied that employment opportunity or benefit." 29 C.F.R. Sec. 1604.11(g) (1986) (emphasis added). The word "submission," in this context, clearly involves a lack of consent and implies a necessary element of coercion or harassment. In addition, the EEOC has indicated that sexual relationships between coworkers should not be subject to Title VII scrutiny, so long as they are personal, social relationships. See Preamble to Interim Guidelines on Sex Discrimination, 45 Fed.Reg. 25024 (1980). While appellees do claim that the liaison between Ryan and Guagenti became more than a private affair when it affected their professional lives, appellees do not claim that they or any other staff members, including Guagenti, were forced to submit to Ryan's sexual advances in order to win promotion.
 
 
 12
 Even assuming that appellees' allegations are true and that the district court's findings are correct, appellees have not set forth a cognizable Title VII claim for sex discrimination. Appellees allege, and the district court found, that Ryan and Guagenti were engaged in a romantic partnership; that Ryan established a special requirement for the Assistant Chief position solely as a pretext to enable him to cause Guagenti to be hired; that appellees were precluded from applying for the position due to the special requirement; and that Guagenti was hired on the recommendation of Ryan. Ryan's conduct, although unfair, simply did not violate Title VII. Appellees were not prejudiced because of their status as males; rather, they were discriminated against because Ryan preferred his paramour. Appellees faced exactly the same predicament as that faced by any woman applicant for the promotion: No one but Guagenti could be considered for the appointment because of Guagenti's special relationship to Ryan. That relationship forms the basis of appellees' sex discrimination claims. Appellees' proffered interpretation of Title VII prohibitions against sex discrimination would involve the EEOC and federal courts in the policing of intimate relationships. Such a course, founded on a distortion of the meaning of the word "sex" in the context of Title VII, is both impracticable and unwarranted.
 
 
 13
 Appellees' Equal Pay Act claim suffers the same fatal defect. The Equal Pay Act prohibits an employer from discriminating between employees "on the basis of sex by paying wages ... at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions...." 29 U.S.C. Sec. 206(d)(1) (1982). Again, the problem confronting appellees is the proper definition of sex discrimination. The Supreme Court, in discussing the Equal Pay Act, made clear that the fundamental purpose of the Act was to remedy disparities in pay arising from traditional concepts of gender. Corning Glass Works v. Brennan, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974). We perceive no valid justification for defining "sex" for Equal Pay Act purposes in a manner inconsistent with the word's meaning under Title VII. Accordingly, appellees' Equal Pay Act claim must fail as well.
 
 
 14
 In sum, we hold that voluntary, romantic relationships cannot form the basis of a sex discrimination suit under either Title VII or the Equal Pay Act. Because that determination is dispositive of this appeal, we need not address the other issues raised by appellants.
 
 III. CONCLUSION
 
 15
 For the reasons stated above, the judgment of the district court is reversed.
 
 
 
 [1]
 There are two requirements for registration: prior experience as a respiratory care practitioner and successful completion of an examination given by the NBRT. Special knowledge or experience in neonatal care is not required