**Elaine CANDELORE, Plaintiff,**

v.

**CLARK COUNTY SANITATION DISTRICT; E. James Gans; Michael G. Pierson; Fred Turnier; and Does I Through XXX, Inclusive, Defendants.**

**No. CV–S–89–165–PMP (RJJ).**

United States District Court, D. Nevada.

Dec. 10, 1990.

John J. Tofano, Las Vegas, Nev., for plaintiff.

Carol R. Davis, Beckley, Singleton De Lanoy, Jemison & List, Chtd., Las Vegas, Nev., for defendants.

## ORDER

PRO, District Judge.

This case arises out of allegedly discriminatory treatment of Plaintiff while she was employed at the Defendant Clark County Sanitation District (the "District"). During the relevant time period, Defendant E. James Gans was the Director of the District. Defendant Fred Turnier was the Manager of the Administrative Services Division within the District, and Defendant Michael Pierson headed the Administrative Support section within Administrative Services. Plaintiff worked in the Administrative Support section before relocating to the Purchasing section and eventually out of the District.

Plaintiff alleges that she was subjected to poor treatment and harassment at the work place on the basis of her age and/or sex. The facts on which she bases this conclusion are as follows. Plaintiff began in the Administrative Services Division in 1978, where she received consistently good evaluations and appropriate promotions. She claims that her troubles started with the arrival of Ginger Woods, a substantially younger woman, in 1982. Woods had been in the District since late 1979, but later was promoted to Division Secretary, working for Defendant Turnier.

Plaintiff claims that Woods received preferential treatment including a lighter work load, longer lunch hours, and new office furniture because she had or was having an affair with Defendants Gans and Turnier. Plaintiff alleges that she complained about this preferential treatment, and that led to her being treated poorly in an effort to force her to leave.

Plaintiff filed charges of age discrimination with the Equal Employment Opportunity Commission, and charges of age and sex discrimination with the Nevada Equal Rights Commission. Having exhausted her administrative remedies, Plaintiff filed a Complaint in state court on February 3, 1989.[1] The case was removed to this Court by Defendants on March 2, 1989 (# 1). The Complaint basically alleges three causes of action. The first is for sex discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983.[2] The second is for age discrimination under the Age Discrimination in Employment Act ("ADEA"). Finally, Plaintiff alleges intentional infliction of emotional distress against the three individual Defendants.

On July 3, 1990 Defendants filed a Motion for Summary Judgment (# 62A). Plaintiff filed an Opposition and supporting exhibits on August 14, 1990 (# 66–69), including an affidavit of Plaintiff (# 68). Defendants filed a Reply on September 11, 1990 (# 75). Plaintiff filed a Supplemental Affidavit in Opposition to Defendants' Motion for Summary Judgment on October 4, 1990 (# 77), which Defendants Moved to Strike on October 12, 1990 (# 78). Plaintiff filed an Opposition to Defendants' Motion to Strike on October 18, 1990 (# 79) and an Affidavit of John J. Tofano in Support of Plaintiff's Opposition on October 22, 1990 (# 80). Defendants filed a Reply on October 31, 1990 (# 81).

## MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed.R.Civ.P. 56, summary judgment is proper "if the pleadings, depo-

1. Although Plaintiff exhausted state as well as federal administrative procedures, her Complaint does not assert violations of state statutes prohibiting discrimination, but only the federal Age Discrimination in Employment Act and portions of the United States Constitution. Further, Defendants' Motion for Summary Judgment (# 62A) seeks summary judgment as to any such claim under state statutes, and Plaintiff does not raise any opposition to those arguments. Therefore, this Court does not address any possible violations of the pertinent Nevada statutes. To the extent Plaintiff put them in issue, summary judgment is granted as to any such claim.

2. Although Plaintiff's Complaint raises Due Process and First Amendment claims, Plaintiff made no attempt in her Opposition to Defendants' Motion for Summary Judgment (# 66) to support these claims or oppose the Motion with respect to these claims. Summary judgment will therefore be granted as to such claims. Local Rule 140–6.

sitions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.1982). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988).

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1305–06 (9th Cir.1982); *Admiralty Fund v. Jones*, 677 F.2d 1289, 1293 (9th Cir.1982).

All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor*, 677 F.2d 1297, 1298 (9th Cir.1982).

The recent trilogy of Supreme Court cases cited above establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1); *see also Avia Group Int'l, Inc. v. L.A. Gear Cal.*, 853 F.2d 1557, 1560 (Fed.Cir.1988).

■■■ Plaintiff brings a claim under 42 U.S.C. § 1983 for sex discrimination in violation of the Fourteenth Amendment's Equal Protection Clause. The Equal Protection Clause is only violated if such discrimination is intentional; that is, the actions must have been taken at least in part because of its adverse effects upon an identifiable group e.g. women. *Personnel Adm'r v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979); *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977). The pleading and proof of liability in such a case is the same as that used in disparate treatment claims under Title VII of the Civil Rights Act of 1964 ("Title VII"). *Riordan v. Kempiners*, 831 F.2d 690, 695–96 (7th Cir.1987) and cases cited therein. These standards apply to claims under the ADEA as well. *Palmer v. United States*, 794 F.2d 534, 537 (9th Cir.1986).

■■■ In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973), the Supreme Court allocated the burdens of proof for a Title VII claim. Plaintiff initially bears the burden of establishing a prima facie case of discrimination which "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Next, the burden shifts to the employer to "articulate some legitimate, nondiscrimina-

tory reason" for the action taken. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. However, the defendant bears only a burden of production, not a burden of persuasion. "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094. The Plaintiff then "must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Id*. at 256, 101 S.Ct. at 1095.

■ Plaintiff may establish a prima facie case of sex discrimination in several different ways. First, she may demonstrate disparate treatment as between men and women. However, there is no allegation that any males were treated more favorably than Plaintiff, and Plaintiff admitted in her deposition that she knows of no males who received preferential treatment.

■ Secondly, Plaintiff may establish a claim based on sexual harassment. There are two types of such claims. The first is "quid pro quo" harassment in which the terms or conditions of employment are conditioned on consent to sexual favors. The second is "hostile environment" harassment, which is only actionable when the sexual harassment is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986) (quoting *Henson v. Dundee*, 682 F.2d 897, 904 (11th Cir.1982)).

It seems that Plaintiff is attempting to establish the first type of claim by showing that Ms. Woods, who allegedly had a sexual relationship with Defendants Gans and Turnier, was treated better than she and others in the office who were not engaged in such a relationship. However, Plaintiff does not allege that she was subject to any sexual advances by Defendants, nor does she have any evidence of any unwelcome sexual conduct by Defendants directed at anyone. Instead, she asserts that her claim is actionable because the different treatment was "bottomed on sex." Plaintiff's Opposition to Motion for Summary Judgment (# 66), at 38.

However, "[t]he gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'" *Vinson*, 477 U.S. at 68, 106 S.Ct. at 2406 (quoting 29 C.F.R. § 1604.11(a) (1985)). In another case where an employee engaged in a romantic relationship with her boss received a promotion as a result of that relationship, the Second Circuit found that the claim of other qualified male employees who were denied the position was not actionable under Title VII. *DeCintio v. Westchester County Medical Center*, 807 F.2d 304, 308 (2d Cir.1986), *cert. denied*, 484 U.S. 825, 108 S.Ct. 89, 98 L.Ed.2d 50 (1987).

> [The boss'] conduct, although unfair, simply did not violate Title VII. Appellees were not prejudiced because of their status as males; rather, they were discriminated against because [the boss] preferred his paramour. Appellees faced exactly the same predicament as that faced by any woman applicant for the promotion: No one but [the paramour] could be considered for the appointment because of [her] special relationship to [the boss]. That relationship forms the basis of appellees' sex discrimination claims. Appellees' proffered interpretation of Title VII prohibitions against sex discrimination would involve the EEOC and federal courts in the policing of intimate relationships. Such a course, founded on a distortion of the meaning of the word "sex" in the context of Title VII, is both impracticable and unwarranted.

*Id*. Further, in a case remarkably similar to the one at bar, the Western District of Pennsylvania held that there was no violation of Title VII where a female employee was treated less favorably than another female employee alleged to have had a romantic relationship with a superior. *Miller v. Aluminum Co. of America*, 679 F.Supp. 495, 501 (W.D.Pa.) (neither the plaintiff nor any male employees could get

the same treatment as the boss' paramour), *aff'd without opinion*, 856 F.2d 184 (3d Cir.1988). The court noted, "Favoritism and unfair treatment, unless based on a prohibited classification, do not violate Title VII." *Id.*

Plaintiff seeks to rely on *King v. Palmer*, 778 F.2d 878 (D.C.Cir.1985) to support her claim. However, in that case, the D.C. Circuit was not faced with the question of whether favoritism of a partner in a consensual relationship could constitute a Title VII violation because none of the parties had raised that issue on appeal. *Id.* at 880. Additionally, six judges of that court, in declining to hear the case *en banc*, noted that the applicability of Title VII to the facts before them was not raised on appeal and so was an improper subject for rehearing *en banc*. *Id.* at 883. Thus, the decision in *King* is not contrary to those in *DeCintio* and *Miller*.

This Court therefore concludes that preferential treatment of a paramour, while perhaps unfair, is not discrimination on the basis of sex in violation of Title VII or, in this case, the Equal Protection Clause of the Constitution. No term or condition of employment was conditioned on submission to unwelcome advances; rather, nobody but the one woman allegedly engaged in the affair could have received special treatment. This is not "quid pro quo" sexual harassment.

■ Plaintiff also seeks to establish a claim for sexual harassment of the hostile environment type. She again relies on the preferences shown toward Ms. Woods. Faced with the same type of claim in *Miller*, the Western District of Pennsylvania held:

> "Snubs and unjust criticisms of one's work are not poisonous enough to create an actionable hostile work environment. As we have discussed [above], the favoritism shown [the boss' paramour] did not violate Title VII. Hostile behavior that does not bespeak an unlawful motive cannot support a hostile work environment claim."

679 F.Supp. at 502.

Plaintiff does add allegations regarding other alleged sexual conduct in the work place. With regard to these additional allegations, however, all they establish even if believed is that there were rumors of other affairs or sexual conduct and that there may have been improper harassment in other areas of the District. There is no admissible evidence of the kind of statements and actions that would establish a hostile or offensive environment for Plaintiff as a result of actions of the Defendants. As noted above, in order to defeat a motion for summary judgment, Plaintiff must designate specific facts demonstrating a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Further, this must be done by production of admissible evidence to support her claim. Fed.R.Civ.P. 56(e). This Plaintiff has failed to do, and summary judgment will be granted as to the hostile environment claim as well.

■ Plaintiff's claim for discrimination on the basis of age in violation of the ADEA must fail for the same reasons as the sex discrimination claim. Plaintiff has not presented evidence from which an inference of discrimination on the basis of age could reasonably be drawn. Moreover, to the extent she has established a prima facie case with regard to certain of the actions taken, Defendants have successfully articulated legitimate, nondiscriminatory reasons for those actions. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Plaintiff has failed to demonstrate that these reasons are a pretext for age discrimination. At best, Plaintiff has evidence that the reasons are a pretext for favoring a romantic partner. As noted above, this does not constitute actionable discrimination. Thus, Plaintiff has failed to establish that there are genuine issues of *material* fact as to her claim for age discrimination.

■ Finally, Plaintiff asserts claims for intentional infliction of emotional distress against the three individual Defendants.

Generally, the elements of this cause of action are (1) extreme and outrageous conduct with either the intention of, or

reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation.

*Star v. Rabello,* 97 Nev. 124, 125, 625 P.2d 90, 91–92 (1981) (citing *Cervantez v. J.C. Penney, Inc.,* 24 Cal.3d 579, 156 Cal.Rptr. 198, 595 P.2d 975 (1979)). Plaintiff has deposition testimony of experts who examined her which indicates that she suffered from depression as a result of work-related stress. However, the actions by Defendants on which Plaintiff relies do not constitute extreme and outrageous conduct as required by the first element of the cause of action.

The only direct mention of Plaintiff's claim for intentional infliction in her entire Opposition to the Motion for Summary Judgment is in a footnote on the last page. There, the Plaintiff explains the theory on which she bases her claim. "Plaintiff contends that pervasive sexual harassment, creating a hostile work environment which has the effect of diminishing Plaintiff's tangible, and intangible work benefits, and which causes severe emotional distress and depression, constitutes extreme and outrageous conduct under Nevada law." Opposition (# 66), at 45 n. 29. Plaintiff goes on to state that the Defendants' actions take on an extreme and outrageous character because Defendants acted in retaliation for Plaintiff's complaints about the alleged sexual harassment, Defendants abused their positions with regard to Plaintiff, and Defendants knew Plaintiff was "peculiarly susceptible to stress by reason of what was occurring at the workplace." *Id.*

However, as this Court found above, there was no sexual harassment or hostile work environment. Furthermore, Plaintiff's attempted reliance on *Priest v. Rotary,* 634 F.Supp. 571 (N.D.Cal.1986), is unavailing. In that case, the plaintiff and other female employees had been subject to pervasive sexual harassment including unwanted touching of their bodies in a sexually suggestive manner. In addition, the plaintiff there was fired although her employer knew that she was the sole source of support for her minor son. The facts shown in *Priest* were far more offensive than any showing made by the Plaintiff here.

The Restatement (Second) of Torts § 41 and Comments thereto (1965) are helpful in determining what constitutes the extreme and outrageous conduct required for this tort. The following excerpts from the comments are instructive:

d. Extreme and outrageous conduct.... Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community....

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

.    .    .    .    .

e. The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests.... Even in such cases, however, the actor has not been held liable for mere insults, indignities, or annoyances that are not extreme or outrageous.

.    .    .    .    .

f. The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity.... It must be emphasized again, however, that major outrage is essential to the tort ...

Thus, although Plaintiff's evidence may establish abuse of the position of her employers and although they were aware she was subject to depression resulting from work-related stress, the conduct on which she relies is not so extreme and outrageous as

to establish this claim.[3] Therefore, summary judgment will be granted as to the claims for intentional infliction of emotional distress as well.

## SUPPLEMENTAL AFFIDAVIT AND MOTION TO STRIKE

Well after the motion for summary judgment was briefed by both sides and submitted to this Court, Plaintiff filed a Supplemental Affidavit (# 77) which asserts facts not previously raised and which shows much more personal knowledge regarding the relationship between Ms. Woods and Defendant Turnier than was previously demonstrated. Defendants' Reply regarding their Motion for Summary Judgment had argued convincingly that Plaintiff had produced no admissible evidence to establish such a romantic involvement, even if such involvement could be the basis for Plaintiff's claims.

Defendants filed a Motion to Strike the Affidavit (# 78) based on this Court's Local Rule 140.4, which provides a party opposing a motion only one opportunity to file a memorandum of points and authorities in opposition to the motion. Defendants argued that this affidavit, which was filed late and raised new facts and arguments, was an improper circumvention of the rule. Defendants moved in the alternative to strike portions of the affidavit which were not based on personal knowledge or in the alternative to permit Defendants a chance to reply to the new allegations. This Court is sympathetic to the position of Defendants faced with newly alleged facts (and no allegation they were not previously known) long after the Opposition and Reply thereto were on file. However, this Court's resolution of the Motion for Summary Judgment renders this Motion to Strike moot. Even if this affidavit is considered, it does not change the outcome.

## ORDERS

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (# 62A) is granted.

IT IS FURTHER ORDERED that Defendants' Motion to Strike (# 78) is denied as moot.

---

3. The actions complained of include demoting Plaintiff, giving her inferior equipment to work on, involuntarily transferring her to another section, denying her consideration to work overtime, and taking away her key to the main building when she was transferred to a section in a different building. These actions are not so beyond the bounds of decency or utterly intolerable in a civilized community as to establish this cause of action.