Gladys **AYERS**, Plaintiff,

v.

**AMERICAN TELEPHONE & TELEGRAPH COMPANY,** Defendant.

No. 92–8603–CIV.

United States District Court, S.D. Florida.

June 30, 1993.

Isidro Garcia, Law Offices of Joseph Vassallo, Lake Worth, FL, for plaintiff.

Michael W. Casey and Richard Tuschman of Muller, Mintz, Kornreich, Caldwell, Casey, Crosland, & Bramnick, P.A., Miami, FL, for defendant.

## ORDER

GONZALEZ, District Judge.

**THIS CAUSE** has come before the Court upon the defendant's motion for summary judgment as to all counts of plaintiff's complaint. This action charges defendant for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., in addition to claims of retaliation.

Gladys Ayers, an employee of AT & T, was the manager of a prime AT & T phone store in Delray Beach, Florida. She alleges that she was transferred improperly to a less lucrative store and that her supervisor (Cleland Wilson) hired a younger, less qualified woman (Diane Maser) to manage the "better" location. The complaint alleges that Wilson awarded this position to Maser as his "reward to Maser for being young and attractive, and for bestowing her sexual favors upon him." *See* Complaint, p. 2, ¶ 6. It would appear, therefore, that plaintiff is alleging a typical Title VII action in which sexual favors are required in exchange for a job opportunity or benefit.

The papers and pleadings recently filed in relation to the pending summary judgment, however, reveal a more complex factual situation than the one contained in plaintiff's complaint.

The affidavits, depositions and pleadings now on file presently disclose that Mr. Wilson, the supervisor, had a substantial relationship with Ms. Maser *prior* to her transfer to the Delray Beach store. Mr. Wilson and Ms. Maser lived together for several years in Orlando where both were employed by AT & T. This relationship apparently "ended" some time in the spring of 1990. Following the "break-up," Mr. Wilson, having become regional supervisor, "arranged" Ms. Maser's replacement of plaintiff as manager of the Delray Beach store.

Plaintiff's original claim was that defendant violated Title VII and the ADEA by hiring his young "girlfriend." It now appears that Mr. Wilson and Ms. Maser were not "together" at the time. They resumed their relationship in December 1990 or January 1991, a few months after the transfers in question.

Plaintiff now maintains that defendant violated plaintiff's Title VII rights by using his position as supervisor to coerce Ms. Maser into *resuming* a sexual relationship with him.

This "new" theory is not alleged in plaintiff's complaint, however, the Court will discuss the issues presented as if the claim had been properly alleged.

The charge that Mr. Wilson coerced Ms. Maser into resuming a sexual relationship with him (thereby violating plaintiff's rights under Title VII) presents difficult obstacles for the plaintiff. First, it appears from the undisputed facts that Mr. Wilson and Ms. Maser did not resume a sexual relationship until several months *after* the transfers were completed. There appears to be a lack of nexus between the transfer and the resumption of the relationship. This is not to say, however, that some coercion could not have existed prior to that time.

To further complicate the problem, Ms. Maser is now *Mrs.* Wilson—Diane Maser and Cleland Wilson having married in 1991.

In simple terms, the questions before the court are: (a) does Title VII create a cause of action on behalf of a plaintiff who suffers employment discrimination because a supervisor hires another person who is either the supervisor's sweetheart or former sweetheart, but who, in any event, later becomes the supervisor's spouse?; and (b) can such an action for alleged coercion to resume a sexual relationship be maintained by a third party victim when the conduct complained of later results in marriage between the alleged "harasser" and "harassee?"

Although these are issues which would have confounded King Solomon himself, this United States District Judge is duty-bound to attempt to answer them.

### TITLE VII–ORIGINAL CLAIM

■ The first issue the Court must address is whether the hiring of one's sweetheart or lover constitutes a violation of Title VII. The plaintiff urges the court to follow *King v. Palmer*, 778 F.2d 878 (D.C.Cir.1985), which seems to hold that such favoritism for a relationship violates Title VII. While the *King* court does not discuss the discrete issue at length, it did hold "that unlawful sex discrimination occurs whenever sex is 'for no legitimate reason a substantial factor in the discrimination.'" *Id.* at 880 (citations omitted). Thus, under plaintiff's view of *King*, any sexual relationship which results in any favoritism would be a violation of Title VII of which plaintiff could complain.

As noted by the parties, this interpretation of the *King* case is squarely in conflict with *DeCintio v. Westchester County Medical Center*, 807 F.2d 304 (2d Cir.1986). In *DeCintio*, the court held that Title VII is not implicated where favoritism occurs on behalf of a consensual sexual partner. The court distinguished between when "the claim itself was premised on the coercive nature of the employer's acts, rather than the fact of the relationship itself." *Id.* at 307. The plaintiff describes this holding as "curious" and "absurd"; this court, however, finds the reasoning of *DeCintio* both logical and persuasive. Not surprisingly, so have other courts which have considered similar questions. *Candelore v. Clark County Sanitation Dist.*, 752 F.Supp. 956 (D.Nev.1990), *aff'd*, 975 F.2d 588 (9th Cir. (1992); *Handley v. Phillips*, 715 F.Supp. 657 (M.D.Pa.1989); *Miller v. Aluminum Co. of America*, 679 F.Supp. 495 (W.D.Pa.1988), *aff'd*, 856 F.2d 184 (3d Cir. 1988).

The court finds, as to the preliminary issue here, that favoring a "paramour" does not constitute a violation of Title VII. The reasoning behind this holding, and the holdings of the cases cited above, is clear. The "discrimination" is not based on sexism (whether gender or activity), but is rather more akin to nepotism. The favoritism is a gender neutral, albeit unfair, justification for the given action. If someone favors a "close friend," other men and women do not thereby have Title VII or ADEA claims.

This holding is bolstered by the EEOC's current policy on the subject. The EEOC has stated that "[n]ot all types of sexual favoritism violate Title VII ... Title VII does not prohibit preferential treatment based upon consensual romantic relationships ... [F]avoritism toward a 'paramour'...may be unfair, but it does not discriminate ...in violation of Title VII, since both [men and women] are disadvantaged for reasons other than their genders." *See* EEOC Policy Guidance on Employer Liability under Title VII for Sexual Favoritism, EEOC Notice No. 915–048 (January 12, 1990).

In her brief in opposition to summary judgment, plaintiff argues against this rationale, stating that it would allow a willing employee to trade sexual intimacy for job advancement. The court recognizes that this scenario presents an interesting question as to the limits of the *DeCintio* line of cases. Nevertheless, the court feels compelled to note that such is not *this* case. In the instant matter, a relationship between Wilson and Maser unquestionably existed prior to the transfers occurring. Further, there are no allegations that Ms. Maser initiated a sexual relationship in order to procure her transfer. There is also no evidence that Mr. Wilson illegally demanded sexual favors from Ms. Maser. If an element of coercion exists, a Title VII claim may lie; however, absent such an element, and under the facts of this case, the Title VII claim set forth in the complaint may not proceed.

### TITLE VII–NEW CLAIM

■ The plaintiff has attempted to create an issue of material fact by asserting a "new" theory of recovery. The straw at which plaintiff grasps is that Ms. Maser was not "dating" Mr. Wilson at the time of the transfer, and that Mr. Wilson used his new position as supervisor to coerce Ms. Maser into resuming their relationship. (This argument, of course, directly contradicts plaintiff's original theory that sexual favors were traded for the employment benefit.) Thus, plaintiff now asserts that it was a violation of her rights under Title VII for Mr. Wilson to use his supervisory position to transfer his

former girlfriend to a store which he controlled.

Ms. Maser (now Mrs. Wilson) stated in her deposition that she was "uncomfortable" at the time of her transfer because of her prior (then dormant) relationship with Wilson. The plaintiff says this is evidence of possible coercion by Mr. Wilson in violation of Title VII. In the light most favorable to plaintiff, this is the *only* evidence of "coercion" on which plaintiff relies. Any fair reading of the deposition indicates that Ms. Maser was "uncomfortable" because her former live-in boyfriend was now her boss, not because she was being coerced in any way at the time. In the same deposition, she also categorically states that Mr. Wilson did *not* have the "upper hand," and that she did *not* feel "pressure" from Mr. Wilson. Ms. Maser/Mrs. Wilson further stated that at all times her personal relationship with Mr. Wilson was consensual. Simply put, there is absolutely no shred of evidence that she was ever pressured to resume a sexual relationship with Mr. Wilson. Thus, even if the Court allows the plaintiff to change her theory, there does not remain any material question of fact to be tried.

This is true for the following reasons.

First, there is no evidence that Mr. Wilson coerced the then Ms. Maser into resuming a relationship. Not only is there no evidence of "actual" coercion, there is no evidence that Mr Wilson intended any coercion. The "uncomfortable" statement relied on by plaintiff is taken out of context and in any event is insufficient to withstand the motion for summary judgment.

Secondly, the plaintiff's "new" allegations do not withstand serious scrutiny. A violation of Title VII occurs when an employer conditions an opportunity or benefit on submission to sex. Here, the "benefit" was the manager's position at the Delray store given to Ms. Maser in October. It was not until two months later (at least) that the sexual relationship resumed. Thus, the nexus between the benefit and the sex is missing. Ms. Maser did not have to submit to Mr. Wilson because she already had the desirable position.

Furthermore, even if plaintiff could prove that it was Mr. Wilson's goal to rekindle a relationship with Ms. Maser, such would not be a violation of Title VII. Under the *De-Cintio* analysis, this would not be discrimination based on sex or gender. Again, it would be more akin to nepotism than to sexism. In the absence of any evidence of coercion, the plaintiff's claim must fail.

Even with such evidence of coercion, however, the plaintiff's claim would still fail as a matter of law.

29 C.F.R. § 1604.11(g), relied on by plaintiff, provides as follows:

> Where employment opportunities or benefits are granted because of an individual's submission to the employer's sexual advances or requests for sexual favors, the employer may be held liable for unlawful sex discrimination against other persons who were qualified for but denied that employment opportunity or benefit.

Under plaintiff's new "coercion" theory, Ms. Maser receives the transfer and *then* is coerced into resuming a sexual relationship with Mr. Wilson. Even if true, the employment opportunity or benefit preceded the alleged harassment. Accordingly, no cause of action could be asserted by a third party plaintiff, because the benefit was in no way conditioned on any harassment or submission to sexual advances.

Finally, as noted by defendant, Ms. Maser was already under Mr. Wilson's supervision at the time of the transfer. The new "theory" makes little sense in light of the fact that Mr. Wilson already held a supervisory position over Ms. Maser. Thus, in order to "coerce" her into resuming a relationship, it was not necessary to transfer her since she was already working under his supervision.

The problem with plaintiff's "new" claim is the facts of the case. It is true that the supervisor gave the position at the lucrative store to his ex-girlfriend (and future wife). It may even be true that he was trying to get her back at the time (although there is no evidence on that point). In any case, neither occurrence is a violation of Title VII.

## ADEA CLAIM

■ The above reasoning has also been applied explicitly to ADEA claims. *Candelore v. Clark County Sanitation Dist.,* 752 F.Supp. 956 (D.Nev.1990). As in *Candelore,* the plaintiff here has provided evidence that the decisions regarding transfers were made in favor of a romantic partner (or former partner/future wife). This does not constitute discrimination on the basis of age. As noted by defendants, plaintiff's own testimony/theory is that Mr. Wilson had slated the Delray Beach position for Ms. Maser. Thus, *any* other employee was in the position of plaintiff regardless of age or gender. The court recognizes that at certain times a plaintiff is permitted to go forward with "inconsistent" causes of action. Here, however, *all* of the evidence proffered by *plaintiff* on the Title VII claim directly refutes her contention that she was discriminated against on the basis of her age. As defendant notes, Ms. Ayers concedes as much in her deposition testimony.

## RETALIATION CLAIM

Although not the focal point of her claim, the plaintiff has also alleged that she was retaliated against for complaining about an earlier decision to transfer her. This allegation is refuted by plaintiff's own recitation of the facts. The plaintiff has insisted throughout that Mr. Wilson sought to place his girlfriend/former girlfriend/future wife in the Delray Beach Store. Indeed, Mr. Wilson allegedly began this "plan" as early as 1989. Thus, that plaintiff complained to her former supervisor about a transfer (which never occurred) in January of 1990 could not have been the reason behind Wilson's later transfer of plaintiff to a less lucrative store. Wilson's "plan" began before plaintiff's original complaint to her supervisor and thus could not have been a factor in his later decision to transfer Ms. Ayers. Wilson transferred plaintiff and replaced her with Ms. Maser for his own personal reasons (according to plaintiff). No inference can be drawn, however, that plaintiff's prior complaint to a different supervisor had any connection to Mr. Wilson's subsequent decision. Indeed, all of the evidence presented by plaintiff points to the opposite conclusion.

## SUMMARY JUDGMENT STANDARD

■ Summary judgment may be granted when there are "... no genuine issues as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Tippens v. Celotex Corp.,* 805 F.2d 949, 952–954 (11th Cir.1986); *See also,* C. Wright, A. Miller and M. Kane, Federal Practice and Procedure, § 2725 at 75 (1983). The evidence must be viewed in the light most favorable to the non-moving party. *Tippens,* 805 F.2d at 952, *Sweat v. Miller Brewing Co.,* 708 F.2d 655, 656–657 (11th Cir.1983).

■ "In order to avoid the grant of summary judgment, a party must demonstrate both the existence of a material fact and a genuine issue as to that material fact. A fact is material if it constitutes a legal defense to an action." *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir.1980). In other words, a fact is material if it is an essential element of the cause of action. *Murphy v. Light,* 257 F.2d 323, 325 (5th Cir.1958). In the instant matter, this burden has not been satisfied. The plaintiff's theories simply do not constitute a Title VII, ADEA, or retaliation claim.

Pursuant to the above discussion, the court finds that there is no genuine issue of material fact as to any of the counts in plaintiff's complaint. Accordingly, summary judgment will be entered on behalf of defendant and against plaintiff.

## CONCLUSION

The plaintiff has walked the line between two different types of Title VII claims. One is favoritism for a sexual partner (not actionable under *DeCintio* ), the other is coercion or "submission" (non-consensual) to a sexual relationship for a work opportunity or benefit. The plaintiff started off claiming the first, and has evolved into claiming the second. Even if plaintiff proves everything she claims to be true, the allegations do not constitute a Title VII, ADEA, or Retaliation claim.

The Court has reviewed the motion and the record, and being otherwise duly advised, it is hereby:

**ORDERED AND ADJUDGED** that the defendant's motion for summary judgment be **GRANTED** in its entirety. The defendant is directed to submit an appropriate final judgment within 10 days of the date of this order. All other pending motions are **DENIED** as moot. This case is **CLOSED.**

**DONE AND ORDERED.**