**Judith A. NEAL, Plaintiff,**

v.

**HONEYWELL, INC., and Alliant Techsystems, Inc., Defendants.**

**No. 93 C 1143.**

United States District Court, N.D. Illinois, Eastern Division.

Feb. 3, 1997.

William J. Holloway, Michael J. Leech, William G. Swindal, Thomas S. Malciauskas, Robert H. Smeltzer, Eric W. Apple, Hinshaw & Culbertson, Chicago, IL, for Judith A. Neal.

James A. Burstein, Michael A. Warner, Timothy F. Haley, Thomas H. Peckham, Kristin E. Michaels, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Honeywell, Inc. and Alliant Techsystems, Inc.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Judith Neal ("Neal") has moved for reconsideration of Judge Plunkett's October 3, 1996 ruling (in the "Opinion," 942 F.Supp. 388[1]) that she cannot sustain her constructive discharge claim against Honeywell, Inc. and Alliant Techsystems, Inc. ("Alliant").[2] For the reasons set forth in this memorandum opinion and order, the motion for reconsideration is granted and the constructive discharge issue remains for trial.[3]

### Background

Opinion at 390–93 sets out the facts of the case in some detail, so that they will not restated here except as relevant to the current motion. Briefly, in early March 1987[4] Neal blew the whistle on the falsification of ballistics test results in the production of ammunition for the United States Department of Defense at Honeywell's Joliet Arsenal Plant ("Joliet"). Neal had been employed at Joliet for two years as an "organizational development specialist," and she had not been promoted during her tenure there. She left Honeywell in August. She has sued it under one provision of the False Claims Act, 31 U.S.C. § 3730(h) ("Section 3730(h)"), alleging that she was retaliated against, harassed and constructively discharged because of her whistleblowing activities.

In Opinion at 394–97 Judge Plunkett denied Honeywell's motion for summary judgment (styled as a "motion for summary judgment on constructive discharge") because Neal had presented sufficient evidence of retaliation and harassment to take those issues to the trier of fact. But in the course of that ruling Judge Plunkett concluded that Neal's constructive discharge claim failed as a matter of law because the evidence showed that Neal had interviewed for and been offered lateral positions appropriate to her education and experience and at the same salary at Honeywell facilities in Minneapolis and Tampa (id. at 395). It was undisputed that she had declined those positions because they were not promotions, and in the context of Honeywell's then-pending motion she had not argued either that the positions were so miserably inadequate that no reasonable employee would have accepted them or that she would have received a promotion but for her "hotline" call (id.). At the same time, Judge Plunkett held out the prospect that Neal might file a motion to reconsider because

---

1. Citations to the Opinion will take the form "Opinion at ——," reflecting the F.Supp. page number but not the volume number.

2. Alliant is the former Honeywell facility that operated the plant at which Neal worked. Because it was a part of Honeywell at the time of the events at issue, "Honeywell" will be used in this opinion as a collective noun that, though it will take a singular verb, includes Alliant.

3. In opposing Neal's motion, Honeywell moved for a Fed.R.Civ.P. ("Rule") 54(d) finding that Neal is not entitled to back pay absent her constructive discharge claim. Neal has moved to strike that motion as premature. On December 9, 1996 Judge Andersen (in Judge Plunkett's absence) entered and continued both motions until the next status hearing in this case, which is now set for February 6, 1997. Today's ruling renders it inappropriate to decide the matter now, and Honeywell's Rule 54(d) motion is therefore denied.

4. Unless otherwise indicated, all dates in this opinion refer to the year 1987.

Honeywell had not raised the issue and hence the parties had not briefed it on the motion for summary judgment (*id.* at 395 n. 17).

Neal has accepted that potential invitation with alacrity, identifying additional evidence as to the inadequacy of the lateral job offers and as to her expectation of promotion. In the first respect she points to the deposition testimony of Dana Badgerow (P. Ex. E at 76), Honeywell's Vice President of contract management for aerospace and defense, that a lateral transfer without a raise could constitute disciplinary action. And on the second issue Neal recites that when she was hired she was told by Bill Dixey ("Dixey"), the Human Resources Manager at Joliet, that she should expect promotion within 18 to 24 months (P. Ex. C, ¶ 3) and that Honeywell's de facto "up or out" policy meant that not receiving a promotion within that time frame signaled the end of one's career at the company (P. Ex. B at 88–89; P. Ex. E, ¶ 6). Neal further says that she was told by Dixey that she was on a "fast track" for promotion (P. Ex. E ¶ 4). Though Honeywell disputes all of Neal's evidence, for the reason stated in the next paragraph her version must be credited for current purposes.

### *Constructive Discharge*

■ Motions to reconsider are normally disfavored (*Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990)). However, they are appropriate where, among other special circumstances (*id.*, quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983)):

the Court ... has made a decision outside the adversarial issues presented to the Court by the parties....

Here Judge Plunkett has expressly acknowledged that to be the case. Hence the standard now to be applied is not that typically used for motions to reconsider but rather the summary judgment standard, under which all facts must be viewed and all reasonable inferences drawn in the light most favorable to Neal (see *Transamerica Ins. Co. v. South*, 975 F.2d 321, 327 (7th Cir.1992)).[5]

■ Neal has presented evidence that, based upon Dixey's representations to her when she was hired, his comment that she was on a "fast track" and her understanding of Honeywell's de facto "up or out" policy, she had an expectation of receiving a promotion within two years of being hired.[6] Based on that evidence and drawing all reasonable inferences in Neal's favor, Neal clearly viewed promotion as imminent when in early March, just before her two-year anniversary with Honeywell, she made the "hotline" call to report the test data falsification. Evidence presented on Honeywell's second motion for summary judgment showed, when viewed in the light most favorable to Neal, that in the period immediately following the call she suffered harassment and recriminations for blowing the whistle. In that context, her decision in April that she would leave Joliet was a reasonable one.

Before Neal later left Honeywell, however, she interviewed for positions with Honeywell in Minneapolis, Tampa and Phoenix. As a result of the interviews Neal was offered jobs in Minneapolis and Tampa, but the offers were for only lateral positions at the same salary that she was earning at Joliet. Those offers must be viewed against the backdrop

---

5. Neal contends that Honeywell has the burden of proving that the lateral job offers were adequate under principles of mitigation. Even apart from the limited role that any burden of proof plays (the equivalent of the baseball rule that ties goes to the runner), that is a non-issue. Neal raised the issue of constructive discharge as part of her Section 3730(h) claim, and evidence of constructive discharge is evidence that Honeywell discriminated against her based on her whistle-blowing activities. Evidence of constructive discharge might *also* be relevant on the issue of mitigation, but neither Neal nor Honeywell

has sought summary judgment on Honeywell's affirmative defense of mitigation. Neal's motion to reconsider simply reopens an issue on which Honeywell had moved for summary judgment.

6. Honeywell Mem. 10 seeks to characterize Neal's evidence as to the two-year time frame for promotion and the de facto "up or out" policy as inadmissible hearsay. Neal R. Mem. 6 correctly responds that both statements are admissions of her party-opponent under Fed.R.Evid. 801(d)(2)(D) and thus non-hearsay.

of Neal's evidence suggesting that if she had not blown the whistle and had remained at Joliet, she would have received a promotion.

In a case such as this one the proper inquiry is whether a reasonable person would have perceived any such lateral transfer, without Honeywell holding out a like prospect of promotion, as a dead end. Neal had expected a promotion within two years of being hired and had just reached her two-year anniversary. But she had also blown the whistle on serious misconduct at Joliet, and it is clear from the evidence of harassment and retaliation that she was reasonable in believing that she had no future there. When she sought positions elsewhere in Honeywell, she was offered only lateral jobs without any salary increase, to say nothing of being without any identified prospect of a promotion. And relatedly there is evidence that at Honeywell transfers without accompanying raises could be disciplinary in nature. Based on that record a reasonable factfinder could find that Neal (also reasonably) had perceived her situation as a promising career that had come to a grinding halt because of her whistleblowing.

■ Contrary to Honeywell's Mem. 8, under appropriate circumstances the failure to promote can indeed form the basis of a constructive discharge claim (cf. *Piech v. Arthur Andersen & Co.*, 841 F.Supp. 825, 832–33 (N.D.Ill.1994)).[7] In the context of Title VII an adverse employment action such as the failure to promote, accompanied by aggravating circumstances beyond ordinary discrimination, supports a constructive discharge claim (*Thames v. Maurice Sporting Goods, Inc.*, 686 F.Supp. 208, 214 & n. 16 (N.D.Ill.1988)). Neal has met that test (which provides guidance regarding, though not directly applicable to, a False Claims Act case): In addition to her evidence that Honeywell failed to promote her, she has presented evidence that she was harassed, that threats were made against her, that

promises of confidentiality as to her identity were breached and that her job responsibilities were taken away. Taken as a whole, this evidence is sufficient to support Neal's assertion that she was constructively discharged.

■ Moreover, Neal's evidence that Tyler systematically removed her job duties between March and August lends additional support to her constructive discharge claim. Stripping an employee of her responsibilities can also give rise to liability for constructive discharge (see, e.g., *Marcing v. Fluor Daniel, Inc.*, 826 F.Supp. 1128, 1141 (N.D.Ill. 1993), *rev'd in part on other grounds*, 36 F.3d 1099 (7th Cir.1994)). Although much of that conduct occurred after Neal had made the decision to leave, it is relevant to show that Neal's working conditions were indeed intolerable at the time of her resignation.[8]

### Conclusion

Because there is a genuine issue of material fact as to Neal's constructive discharge claim, her motion to reconsider is granted. Judge Plunkett has given Honeywell more than its due in entertaining its second attempt to secure summary judgment on a predicate that its counsel had to have known was insupportable (see Opinion at 394 n. 15). It is time that this long-pending action—including the constructive discharge issue—is submitted to a factfinder for decision, and at the February 6 status hearing the parties will be expected to identify what needs to be done to accomplish that quickly.

---

7. Constructive discharge is "a judicially-created concept that provides relief when 'working conditions were so intolerable that a reasonable person would have been compelled to resign'" (*Gray v. Ameritech Corp.*, 937 F.Supp. 762, 772 (N.D.Ill.1996)).

8. Neal's having remained at Joliet until her house was sold in August is not fatal to her claim, for an employee need not face financial ruin in order to maintain a constructive discharge claim (*Marcing*, 826 F.Supp. at 1141).